STATE OF NORTH CAROLINA v. RUSSELL WILLIAM TEASLEY

No. 8629SC154

(Filed 5 August 1986)

**1. Searches and Seizures § 20— application for warrant—oral statements to magistrate not recorded—affidavit only as basis for issuance of warrant**

Where an officer testified that, at the time he submitted his sworn statement with a search warrant application to the magistrate, he also made oral statements under oath that he had seen some white powder which he believed to be cocaine, but the evidence did not show that the magistrate recorded or contemporaneously summarized in the record the officer's statement to her, the magistrate's additional information thus was not recorded as required by N.C.G.S. § 15A-245(a), and the issuance of the warrant therefore must rest solely on the officer's affidavit.

**2. Searches and Seizures § 23— issuance of warrant—sufficiency of affidavit to show probable cause**

An affidavit alleging that defendant assaulted members of a volunteer fire department by pointing a long shoulder type weapon at them and thereby preventing them from approaching his barn to extinguish a fire, that arresting officers who entered his residence to arrest defendant observed various types of drug paraphernalia, and that defendant was a known drug courier for someone in the area of Chapel Hill provided the magistrate with a substantial basis for concluding that there was probable cause to believe that evidence of a crime would be discovered in defendant's house, and the trial court therefore did not err in denying defendant's motion to suppress evidence seized during a search of his house.

**3. Constitutional Law § 30— prior criminal record—discovery—defendant not prejudiced**

Defendant was not prejudiced by the trial court's alleged failure to grant his motion to discover his prior criminal record, since the court apparently granted defendant's motion; the record did not indicate any renewed requests by defense counsel for a criminal record or further orders; the State made no use of any criminal record at trial or sentencing; and defendant thus failed to show any prejudice.

**4. Constitutional Law § 44— time to prepare defense—no denial of effective assistance of counsel**

There was no merit to defendant's contention that he was denied effective assistance of counsel because the court denied his motion for a continuance where defense counsel moved on 18 September for a continuance alleging that defendant had retained him on 17 September and he had not had an opportunity to prepare a defense, but the record showed that defense counsel had been involved in defendant's defense since 25 March; furthermore, defendant did not offer evidence that counsel's performance at trial or prior to trial was in any way deficient.

State v. Teasley

**5. Criminal Law § 42— items connected with crime—admissibility**

There was no merit to defendant's contention that $5,900 in U. S. currency, rolling papers and pipe, electric digital scales, a triple beam balance scale, a water bong, a plastic bag containing white powder, an airline bag in which the white powder was found, and a briefcase with documents should have been excluded because none of the items were relevant to the crimes of trafficking in cocaine or assault on a fireman with which he was charged.

**6. Narcotics § 4— substances mixed by investigating officer—possession of cocaine weighing between 200 and 400 grams—sufficiency of evidence**

In a prosecution of defendant for trafficking in cocaine there was no merit to defendant's contention that a large plastic bag of white powder containing cocaine and found in his living room was rendered inadmissible by the officer's mixing at the time of the search the powder and rock found on a glass table into the bag which was found 18 inches away in a soldering iron box, since, on the evidence presented, it was for the jury to decide whether defendant possessed a mixture of cocaine weighing more than 200 but less than 400 grams.

**7. Narcotics § 3.1— chain of custody of material found in defendant's residence**

Evidence on chain of custody was sufficient reasonably to support the conclusion that white powder analyzed by an SBI chemist was the same as that discovered by an officer in defendant's residence.

**8. Assault and Battery § 14— assault on fireman—knowledge that victim was fireman—sufficiency of evidence**

In a prosecution of defendant for assault on a fireman evidence was sufficient to show that defendant knew or had reasonable grounds to know that the victims were firemen where it tended to show that two of the three vehicles in which the volunteer firemen arrived were displaying rotating red lights; one of the firemen was wearing a jacket which bore fire department insignia; and two of the three firemen verbally identified themselves to defendant as firemen called to extinguish the barn fire.

**9. Criminal Law § 138.14— presumptive sentences imposed—no findings as to aggravating and mitigating factors required**

Where the trial court imposed presumptive terms for all offenses of which defendant was convicted, it had no duty to make findings regarding aggravating and mitigating factors.

**10. Narcotics § 5— sentence—no reduction for help in convicting other drug traffickers**

There was no merit to defendant's contention that the trial court erred by finding that he did not qualify for a reduction of his sentence for trafficking in cocaine pursuant to N.C.G.S. § 90-95(h)(5) because he provided substantial assistance in identifying, arresting, or convicting others involved in drug trafficking, since defendant did not specifically contend that he provided substantial assistance but instead maintained that, because the court did not grant the motion to continue the trial, he was denied a sufficient opportunity to provide authorities with information on drug trafficking.

**11. Narcotics § 6— money taken from defendant at time of arrest—forfeiture improper**

In a prosecution of defendant for trafficking in cocaine the trial court erred in ordering that $5,900 in U. S. currency found on defendant's person at the time of his arrest should be forfeited to the State under N.C.G.S. § 90-112 (a)(2), since mere possession of a large amount of money, together with narcotics, does not subject defendant to the forfeiture provision of the statute.

APPEAL by defendant from *Gudger, Judge.* Judgments entered 26 September 1985 in Superior Court, HENDERSON County. Heard in the Court of Appeals 10 June 1986.

Defendant was tried on indictments charging him with one count of trafficking in cocaine and three counts of assault on a fireman. The State's evidence tended to show, in pertinent part, that:

On 21 March 1985 the Mills River Volunteer Fire Department received a call stating that a barn was on fire. Volunteer firemen responded by proceeding to the barn, which was located on defendant's property near his dwelling. When the firemen arrived they saw defendant on the balcony of his house. Defendant asked who they were and what they were doing, to which they responded that they were firemen called to extinguish the fire. Defendant asked them to produce some identification. When they responded that they did not have any, defendant went inside his house and returned several minutes later brandishing a shotgun or a rifle. Defendant aimed the gun at the firemen and told them to get off his property because they were trespassing.

The firemen contacted the Henderson County Sheriff's Department, and several deputies soon arrived. While several deputies engaged defendant in conversation, several others entered the residence, apprehended defendant, and arrested him.

Officer Lawing, a detective with the Henderson County Sheriff's Department, entered the residence to assist the deputies. He checked the downstairs area for other possible suspects or armed persons. While inside, he observed a small quantity of white crystalline powder and some congealed matter of the white powder in the midst of the white powder (a "rock") on a glass table in the living room.

Based on this observation and other items, Officer Lawing obtained a search warrant and returned to defendant's residence to conduct a more thorough search. It appeared to him that the powder and "rock" on the glass table had not been disturbed since the time of arrest. He estimated that there was about a gram of powder and that the "rock" weighed about a gram as well. He inspected the general area around the table but saw nothing. He then looked in a record shelf that held cassette tapes and that was located approximately twelve to eighteen inches from the glass table. He found a soldering iron box in the record shelf which contained a large plastic bag containing a white crystalline substance which he believed to be cocaine. He also believed that this bag had been opened and closed several times. He took this bag over to the glass table and added the gram of powder and the "rock" to it, thereby mixing the powders together.

The State introduced, and the court admitted, the bag containing the mixed powders. A forensic chemist for the State Bureau of Investigation testified that in this bag were 313 grams of white powder containing cocaine. The State's expert opined that the cocaine represented "[a]nywhere from 5 to 65 percent" of the total contents of the bag based on his testing.

The jury returned verdicts of guilty on all charges. From judgments of imprisonment, defendant appeals.

*Attorney General Thornburg, by Special Deputy Attorney General David S. Crump, for the State.*

*Elmore & Powell, P.A., by Stephen P. Lindsay and Bruce A. Elmore, Sr., for defendant appellant.*

WHICHARD, Judge.

Defendant contends the court erred by failing to grant his motion to suppress evidence seized pursuant to the search of his house. Specifically, he contends that the magistrate lacked a substantial basis for concluding that probable cause existed justifying issuance of a search warrant. He argues that "[t]he allegations of Officer Lawing [in the search warrant application] were a combination of conclusions, multiple level hearsay, uncorroborated informant information and irrelevancies . . . ."

Officer Lawing's affidavit reads:

ON DECEMBER 3, 1984 THIS APPLICANT RECEIVED INFORMA-
TION FROM [AN S.B.I. AGENT] THAT RUSSELL WILLIAM
TEASLEY OF HORSE SHOE HAD BEEN INVOLVED IN A COCAINE
TRAFFICKING INCIDENT IN RALEIGH, N.C. AND THAT THIS
AGENCY SHOULD BE MADE AWARE OF THIS INFORMATION. THIS
APPLICANT RECEIVED INFORMATION ON MARCH 20, 1985 FROM
. . . THE N.C. ATTORNEY GENERAL'S OFFICE IN RALEIGH, N.C.
THAT RUSSELL WILLIAM TEASLEY OF SUNSET CAMPGROUND,
HORSE SHOE, N.C. HAD CALLED [THAT OFFICE] AND STATED
THAT HE WAS "DEALING" COCAINE AND THAT [THERE] WERE
SOME PEOPLE TRYING TO KILL HIM . . . [AND] [FURTHER] STATED
TO THIS APPLICANT THAT MR. TEASLEY WAS A KNOWN COURIER
FOR A SUBJECT IN THE CHAPEL HILL, N.C. AREA.

MARCH 21, 1985 THIS AGENCY'S COMMUNICATIONS SECTION
RECEIVED A RADIO BROADCAST ON THE FIRE DEPARTMENT FRE-
QUENCY THAT THERE WAS A BARN ON FIRE AT THE LOCATION
DESCRIBED AND UPON ARRIVAL OF MEMBERS OF THE MILLS
RIVER [VOLUNTEER] FIRE DEPT. AT 5:33 P.M. THAT A WHITE
MALE SUBJECT NAMED TEASLEY HAD PREVENTED [THEIR] RE-
SPONSE AS THIS SUBJECT [ASSAULTED] MEMBERS OF THIS FIRE
DEPT. BY POINTING A LONG [SHOULDER] TYPE WEAPON AT THEM.
THE FIRE DEPT. CALLED THIS AGENCY FOR ASSISTANCE. UPON
[ARRIVAL] AT THE [AFOREMENTIONED] LOCATION THIS APPLI-
CANT OBSERVED A WHITE MALE SUBJECT [CARRYING] A LONG
SHOULDER TYPE WEAPON TO THE BEIGE FORD RANCHERO
TRUCK AS DESCRIBED AND THEN ENTER THE RESIDENCE DE-
SCRIBED. THIS SUBJECT WAS IDENTIFIED TO THIS APPLICANT AS
BEING RUSSELL W. TEASLEY. THIS SUBJECT SHOUTED [OB-
SCENITIES] AT RESPONDING OFFICER OF THIS AGENCY. WAR-
RANTS WERE ISSUED BY MAGISTRATE DERMID [FOR] AS-
SAULTING A FEMALE, IN WHICH TEASLEY HAD ASSAULTED HIS
WIFE PREVIOUS TO THIS INCIDENT. OFFICER[S] APPROACHED THIS
RESIDENCE AND TEASLEY CAME OUT ONTO A SECOND STORY
BALCONY AND REFUSED TO TALK WITH THE RESPONDING OFFI-
CERS. OFFICERS ENTERED THIS RESIDENCE AND SUBDUED
TEASLEY AND OBSERVED IN THIS RESIDENCE WERE VARIOUS
ITEMS OF DRUG [PARAPHERNALIA], ROLLING PAPERS, PIPES, ETC.

WHICH WOULD BE USED TO INTRODUCE IN TO YOUR BODY CON-
TROLLED SUBSTANCES THAT WOULD [BE] ILLEGAL TO POSSESS.

THE STRUCTURE THAT WAS BURNING WAS OF A SUSPICIOUS
NATURE AS THE WEATHER AT THE TIME WAS [CONSTANT] RAIN
AND THE FACT THAT TEASLEY WOULD NOT LET THE RESPOND-
ING FIREMEN . . . APPROACH THE SCENE TO EXTINGUISH THE
FIRE.

THIS APPLICANT ALSO OBSERVED SEVERAL FIREARMS AND
BOXES OF AMMUNITION INSIDE THE AFOREMENTIONED RESI-
DENCE ALSO LYING ON THE ROOF OF THE BEIGE FORD TRUCK
ALSO DESCRIBED, [SITTING] IN THE DRIVEWAY OF THIS RESI-
DENCE.

During the suppression hearing, Officer Lawing testified that
when he submitted his sworn statement with the search warrant
application to the magistrate, he "made oral statements [under
oath to the magistrate] in her office at the time of application to
the fact that [he] had seen some white powder, which [he] believed
to be cocaine, which [he] did not put in the original [.]"

The trial court found that:

[T]he application is a sufficient recital together with
other information provided to the magistrate to warrant and
justify the magistrate in issuing a search warrant for possi-
ble controlled substances; for firearms and for flammable liq-
uid. The totality of circumstances which existed at the time
the application was made including the conduct of the defend-
ant recited in the application. The fire and other circum-
stances leading to the entry into the residence of the
defendant following the defendant's conduct constituting or
appearing to constitute felonious assault upon law enforce-
ment officers and private personnel, appears to me to justify
the act of [Officer] Lawing in applying for the warrant pur-
ports [sic] substantially each of the assertions made by him in
the application and certainly warrants the issuance of the ap-
plication on the basis of the information supplied to the mag-
istrate; accordingly, it is the judgment of the Court that the
search warrant was regularly and properly issued and the
motion to suppress is denied.

. . . .

The only supplemental information is that [Officer] Lawing states that he testified under oath to the magistrate to observing a white powder and [the court] considered that the magistrate was privileged to consider that along with all other facts related in the search warrant application. The application itself shows quite a number of articles seen in plain view in the course of lawful arrest. [The court finds] that that information contained in this search warrant justified the issuance of the search warrant on [its] face alone [, even disregarding Officer Lawing's additional statement].

This Court has stated that:

The scope of our review is to determine whether these findings are supported by competent evidence and whether they support the conclusion of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E. 2d 618, 619 (1982). "[T]he duty of a reviewing court [the trial court, initially] is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed. 2d 527, 548 (1983), citing *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960) . . . .

In resolving that issue first we determine whether information presented to the magistrate complies with G.S. 15A-244. *See State v. Arrington*, 311 N.C. 633, 636, 319 S.E. 2d 254, 256 (1984). Only information that so complies may support a magistrate's decision that probable cause exists to issue a search warrant. Second, we examine the information properly available to the magistrate to see whether it provides a sufficient basis for finding probable cause and issuing a search warrant. We examine that information under the "totality of circumstances" test reaffirmed by the Supreme Court of the United States in *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527, and adopted by our Supreme Court in *Arrington*, 311 N.C. at 643, 319 S.E. 2d at 261, for resolving questions arising under Article I, Section 20 of the Constitution of North Carolina with regard to the sufficiency of probable cause to support the issuance of a search warrant.

Under our statutes a magistrate issuing a warrant can base a finding of probable cause only on statements of fact

confirmed by oath or affirmation of the party making the statement, or on information which the magistrate records or contemporaneously summarizes in the record. G.S. 15A-244; G.S. 15A-245(a). The necessity of a sworn statement is consistent with existing case law. *See, e.g., Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed. 2d at 548 ("The task of the issuing magistrate is simply to make a practical, common-sense decision . . . given all the circumstances set forth in the *affidavit* before him . . . .") (emphasis supplied).

*State v. Heath*, 73 N.C. App. 391, 393, 326 S.E. 2d 640, 642 (1985).

[1] Unlike in *State v. Hicks*, 60 N.C. App. 116, 298 S.E. 2d 180 (1982), *disc. rev. denied*, 307 N.C. 579, 300 S.E. 2d 553 (1983), the evidence here does not show that the magistrate recorded or contemporaneously summarized in the record Officer Lawing's statement to her that he had observed some white powder which he believed to be cocaine. *Hicks*, 60 N.C. App. at 118-21, 298 S.E. 2d at 182-83. The magistrate's additional information thus was not recorded as required by N.C. Gen. Stat. 15A-245(a). *Id.* at 121, 298 S.E. 2d at 183. Accordingly, under our statutory requirements the issuance of the warrant must rest solely upon Officer Lawing's affidavit. *See Heath, supra*, 73 N.C. App. at 395, 326 S.E. 2d at 643.

[2] Examining this affidavit within the guidelines adopted in *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527, and *Arrington*, 311 N.C. 633, 319 S.E. 2d 254, we hold that it provides a substantial basis for concluding that probable cause existed. Defendant contends the affidavit is insufficient upon its face because it is based, in part, on false statements. The incident in Raleigh related by the S.B.I. agent, according to defendant, really involved "a small amount of marijuana . . . insufficient to constitute a trafficking violation . . ." and did not involve cocaine trafficking as alleged in the affidavit. Further, the information from the Attorney General's office was really to the effect that defendant "had basically admitted that he was dealing in cocaine . . ." by failing to deny this fact in his conversation with that office. Defendant argues that Officer Lawing thus misrepresented this communication in his affidavit by stating that the Attorney General's office told him that defendant was "dealing" cocaine.

Assuming, *arguendo*, that under the standard set forth in *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57

L.Ed. 2d 667, 672 (1978), we must disregard these statements as false, we nevertheless "find that there was probable cause to support the search warrant on the face of the affidavit when this false information is disregarded." *State v. Louchheim*, 296 N.C. 314, 321, 250 S.E. 2d 630, 635, *cert. denied*, 444 U.S. 836 (1979). The affidavit specifically alleges the following key facts:

(1) Defendant assaulted members of the Mills River Volunteer Fire Department by pointing a long shoulder type weapon at them and thereby preventing them from approaching his barn to extinguish a fire.

(2) Upon entering the residence to arrest defendant, the arresting officers observed various types of drug paraphernalia, rolling papers, and pipes used to introduce illegal, controlled substances into the body.

(3) Defendant was a known drug courier for someone in the area of Chapel Hill, North Carolina.

We hold that these facts provided the magistrate with a substantial basis for concluding that there was probable cause to believe that evidence of a crime would be discovered in defendant's house. *State v. Moore*, 79 N.C. App. 666, 672, 340 S.E. 2d 771, 776 (1986); *Heath, supra*, 73 N.C. App. at 393, 326 S.E. 2d at 642. Accordingly, the court did not err in denying defendant's motion to suppress.

[3] Defendant contends the court erred in failing to grant his motion to discover his prior criminal record. In support of this contention he cites N.C. Gen. Stat. 15A-903(c) which provides: "Defendant's Prior Record.—Upon motion of the defendant, the court must order the State to furnish to the defendant a copy of his prior criminal record, if any, as is available to the prosecutor."

The record shows that defendant filed a motion for court-ordered discovery regarding his criminal record. The prosecutor indicated that he did not know of a criminal record and did not intend to use one. Counsel for defendant indicated that he had attempted to obtain defendant's criminal record from the Wake County Clerk of Superior Court without success.

The court ruled as follows:

We will see where we are on that, if [the court enters] an order requiring this production before impanelling the jury for the trial of the action that would protect you fully, [the court thinks], for purpose of negotiation and also perhaps for purposes of cross[-]examination and for the purpose of knowing what is [forthcoming].

The court thus did not deny, but apparently granted, defendant's motion. The record does not indicate any renewed requests by defense counsel for a criminal record or further orders. The State made no use of any criminal record at trial or sentencing. Defendant thus has failed to show any prejudice. N.C. Gen. Stat. 15A-1443. Accordingly, this assignment of error is overruled.

[4] Defendant contends he was denied effective assistance of counsel because the court denied his motion for a continuance. We disagree.

On 18 September 1985 defense counsel moved for a continuance alleging that defendant had retained him on 17 September 1985 and that he had not had an opportunity to prepare a defense. However, the record shows that defense counsel had been involved in defendant's defense since 25 March 1985, three days after defendant's arrest. On 25 March 1985 counsel filed an affidavit and motion seeking to have defendant committed to a state mental health facility for observation. On 2 May 1985 counsel, "limiting his appearance to District Court in this matter . . .," filed a motion asserting defendant's incapacity to proceed. On 6 June 1985 counsel gave notice, by way of limited appearance, of his intention to assert an insanity defense. On 15 August 1985 counsel entered a limited appearance for the purpose of making a motion for discovery.

Further, defendant has not offered evidence that counsel's performance at trial or prior to trial was in any way deficient. He thus has failed to show that his counsel's conduct fell below an objective standard of reasonableness. *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E. 2d 241, 248 (1985), *citing Strickland v. Washington*, 466 U.S. 686, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). He has not satisfied the *Strickland* two-prong test for establishing ineffective assistance. *See id.* at 562, 324 S.E. 2d at 248. Accordingly, this assignment of error is overruled.

**[5]** Defendant contends the court erred by admitting, over objection, State's exhibits two, five, six, seven, eight, ten, eleven and twelve, which included $5,900 in United States currency, rolling papers and pipe, electric digital scales, a triple beam balance scale, a water bong, a plastic bag containing white powder, an airline bag in which the white powder was found and a briefcase with documents. He argues that none of these items were relevant to the crimes of trafficking in cocaine or assault on a fireman and that they thus should have been excluded under N.C. Gen. Stat. 8C-1, Rules 401, 402, and 403. We disagree.

Our Supreme Court recently stated:

"[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. N.C.G.S. Sec. 8C-1, Rule 401. Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. Sec. 8C-1, Rule 403. Unfair prejudice has been defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Commentary to N.C. R. Evid. 403. Whether or not to exclude evidence under Fed. R. Evid. 403 is a matter within the sound discretion of the trial judge. [Citation omitted.]

*State v. Mason*, 315 N.C. 724, 731, 340 S.E. 2d 430, 434-35 (1986). We hold that the aforementioned exhibits, with the exception of the briefcase, were relevant to the crime of trafficking in cocaine in that they tended to show that defendant knowingly possessed cocaine and was trafficking in it. The briefcase was in defendant's possession at the time of arrest and tended to explain or illustrate the circumstances surrounding his arrest. We perceive no "danger of unfair prejudice" that substantially outweighed the probative value of these exhibits. Accordingly, this assignment of error is overruled.

**[6]** Defendant contends the court erred by admitting, over objection, State's exhibit nine, the large plastic bag of white powder containing cocaine found in his living room. Specifically, he argues

State v. Teasley

that Officer Lawing rendered this exhibit inadmissible by mixing the powder and rock found on the glass table into the bag from the soldering iron box at the time of the search. He argues that mixing the powders constituted a material change in the condition of the exhibit between the time of the alleged crime and the trial, and that the court erred in failing to grant his motion to dismiss the charge of trafficking in cocaine because the State failed to present sufficient evidence of drug quantity due to the mixing of the powders.

Underlying these contentions is a concern that only the powder and rock on the glass table, and not the large plastic bag found in the soldering iron box, contained cocaine prior to the mixing. The State's expert witness, a forensic chemist for the State Bureau of Investigation, in essence acknowledged that his testing could not determine conclusively that both the large bag of powder and the powder on the table contained cocaine prior to the mixture. Therefore, since the powder in the bag could have been a non-controlled substance prior to the mixing and testing, defendant argues that (1) the powder in this bag was "tainted" prior to testing by the addition of the powder from the table and thereby rendered inadmissible and (2) the State failed to present sufficient evidence that he possessed a cocaine mixture weighing between 200 and 400 grams as required for conviction under N.C. Gen. Stat. 90-95(h)(3)(b), since all of the cocaine could have been on the table in a pile weighing only approximately two grams.

In *State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976), as summarized in *State v. Anderson*, 76 N.C. App. 434, 333 S.E. 2d 762 (1985),

the chemist visually examined nineteen envelopes of vegetable matter seized from the defendant and determined that the contents were the same. He then examined chemically and microscopically the contents of five of the envelopes selected at random and identified the contents as marijuana. The Court found that "there was sufficient evidence to go to the jury on the question of whether all the envelopes contained marijuana." *Id.* at 302, 230 S.E. 2d at 151-52.

*Anderson*, 76 N.C. App. at 437, 333 S.E. 2d at 764-65.

In *Anderson* the defendant, like the defendant in *Hayes*, contended that the evidence was not sufficient to convict him of trafficking in heroin by either possession or sale because only three of fourteen packets of powder were chemically analyzed and the weight of the analyzed powders was under one gram although the total weight of all fourteen packets was in excess of six grams. Over four grams of a mixture containing heroin was required for conviction. Following *Hayes, supra,* this Court held that testimony by an S.B.I. forensic chemist that in his opinion all fourteen packets contained heroin, even though only three packets were chemically analyzed, "allowed the jury to determine that all the packets contained heroin." *Anderson,* 76 N.C. App. at 438, 333 S.E. 2d at 765.

In *State v. Horton,* 75 N.C. App. 632, 331 S.E. 2d 215, *cert. denied,* 314 N.C. 672, 335 S.E. 2d 497 (1985), defendant sold six tinfoil packets containing white powder to an undercover agent. When the contents of all six packets were dumped together for testing purposes they weighed 6.65 grams, and this combined mixture contained heroin. This Court held this evidence sufficient to support defendant's conviction of trafficking in heroin by possessing and selling more than four grams of a heroin mixture, notwithstanding defendant's contention that all of the heroin could have been in one packet whose contents weighed no more than one gram and a fraction. *Horton,* 75 N.C. App. at 633-34, 331 S.E. 2d at 216. *See also State v. Dorsey,* 71 N.C. App. 435, 322 S.E. 2d 405 (1984).

Defendant correctly notes that, unlike the substances in *Horton* and *Dorsey,* the substances here were not found "together." The large quantity of white powder was found in a sealed plastic bag in a soldering iron box in a stereo shelf located approximately a foot and a half from the glass table on which the smaller portion lay. We further note that here an officer conducting an investigation at the crime scene combined the substances, not a chemist conducting a chemical analysis in the laboratory as in *Horton* and *Dorsey.*

While we do not commend such a practice by law enforcement officers, and while defendant's arguments are not without substance, we believe that pursuant to *Hayes* and its progeny our Supreme Court would hold that on the evidence presented it was

for the jury to decide whether defendant possessed a mixture of cocaine weighing more than 200 but less than 400 grams. We thus hold that State's exhibit nine was properly admitted and permitted a jury determination that defendant possessed the requisite quantity of cocaine.

[7]  Defendant contends the court erred in admitting State's exhibits nine and ten because the State failed to establish the requisite chain of custody. We disagree.

Officer Lawing testified that he took the two bags containing white powder (exhibits nine and ten) from defendant's residence to the Henderson County Sheriff's Department, where he tagged and identified them by case number and placed them in a narcotics safe. He next transported the bags to the S.B.I. lab where he placed them in a lock box to await analysis. The S.B.I. forensic chemist testified that he took the bags from the lock box to analyze them. The chemist testified that he held the only key to this lock box. After analyzing the contents, the chemist gave the bags to Officer Norton of the Hendersonville Police Department, who delivered them directly to Officer Lawing at the Henderson County Sheriff's Department.

We hold that this evidence "is sufficient to reasonably support the conclusion that the substance analyzed [was] the same as that obtained from defendant [and therefore] both the substance and the results of the analysis [were properly] admissible." *State v. Callahan*, 77 N.C. App. 164, 168, 334 S.E. 2d 424, 427 (1985). In *Callahan* this Court held that the evidence was sufficient to establish a proper chain of custody as to a white powder. There, a S.L.E.D. agent placed a red seal on the envelope containing the white powder, initialed it, and delivered it to the S.L.E.D. lab. The S.L.E.D. chemist obtained this envelope from his personal locker, to which the chief chemist also had a set of keys. When the chemist obtained the envelope, the red seal was unbroken. The court concluded that this evidence was sufficient reasonably to support the conclusion that the substance analyzed was the same as that obtained from defendant. *Id.*

While the evidence on chain of custody is less complete here than in *Callahan*, it is sufficient reasonably to support the conclusion that the substance analyzed was the same as that discovered by Officer Lawing in defendant's residence. *Id. See also State v.*

*Sessoms*, 79 N.C. App. 444, 339 S.E. 2d 458 (1986). As in *Callahan*, weaknesses in the chain of custody go to the weight rather than the admissibility of the evidence. *Id.*

Defendant also contends the chain of custody for State's exhibit nine is incomplete because Officer Lawing mixed the powder and rock from the glass table with the contents of the large plastic bag found in the soldering iron box. This contention is essentially the same as defendant's "material change in condition" argument, *supra*, and it fails for the reasons set forth in discussing that argument.

[8] Defendant contends the court erred in failing to grant his motion to dismiss the charges of assault on a fireman. Specifically, he argues that there was no evidence that he knew the victims were firemen when they came on his property to extinguish the barn fire. We disagree.

N.C. Gen. Stat. 14-34.2 provides, in pertinent part: "Any person who commits an assault with a firearm or any other deadly weapon upon any . . . [f]ireman . . . in the performance of his duties shall be guilty of a Class I felony." Knowledge is an essential element of this offense. *State v. Avery*, 315 N.C. 1, 31, 337 S.E. 2d 786, 803 (1985). Specifically, conviction under N.C. Gen. Stat. 14-34.2 requires "not only that the jury find that the victim was a [fireman] but also that the defendant 'knew or had reasonable grounds to know' that the victim was a [fireman]." *Id.*

The evidence here shows that two of the three vehicles in which the volunteer firemen arrived were displaying rotating red lights, one of the firemen was wearing a jacket which bore fire department insignia, and two of the three firemen verbally identified themselves to defendant as firemen called to extinguish the barn fire. We hold this evidence sufficient to show that defendant knew or had reasonable grounds to know that the victims were firemen. Accordingly, this assignment of error is overruled.

Defendant contends the court erred by improperly instructing the jury. There was, however, no objection to the instructions at trial as required by N.C. R. App. P. 10(b)(2). Defendant argues, nevertheless, that there was "plain error" mandating a new trial. *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). We disagree.

Plain error is to be applied only " 'in the exceptional case where, after reviewing the entire record, it can be said that the claimed error is a *"fundamental* error . . . ." ' " *Odom*, 307 N.C. at 660, 300 S.E. 2d at 378. " '[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Id.* at 661, 300 S.E. 2d at 378.

Defendant contends the court, in its summary of the State's evidence, incorrectly stated that the firemen told defendant that "they were firemen; that they displayed their uniforms, that their uniforms had firemen's markings on them . . . ." According to defendant the evidence shows that none of the firemen was wearing a uniform except for one who was wearing a jacket with a patch indicating he was a volunteer fireman, and thus no uniforms were displayed to defendant. Defendant also maintains that, while the court summarized the State's evidence, it did not summarize his evidence; specifically, he argues that the court failed to instruct that Officer Lawing mixed the powders at the crime scene, that defendant was under the influence of drugs at the time of the alleged criminal activity, or that, as defendant contends, the firemen were not wearing uniforms and had no identification.

We hold that this is not "the rare case" warranting reversal in the absence of a proper objection at trial. *Id.* Our review of the whole record fails to convince us that these alleged errors in the instructions "tilted the scales" and caused the jury to reach its verdict convicting defendant. *State v. Walker*, 316 N.C. 33, 39, 340 S.E. 2d 80, 83 (1986). *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979), and *State v. Pryor*, 59 N.C. App. 1, 295 S.E. 2d 610 (1982), cited by defendant, antedate the plain error analysis which our Supreme Court introduced in *Odom*. Accordingly, this assignment of error is overruled.

[9] Defendant contends the court erred by failing to find several mitigating factors offered by defense counsel at the sentencing hearing. Citing *State v. Gardner*, 312 N.C. 70, 320 S.E. 2d 688 (1984) and *State v. Heath*, 77 N.C. App. 264, 335 S.E. 2d 350 (1985), he argues that the court was under a duty to make certain findings in mitigation. However, N.C. Gen. Stat. 15A-1340.4(b) provides, in pertinent part, that "a judge need not make any findings regarding aggravating and mitigating factors if he . . . imposes

the presumptive term . . . ." The court imposed presumptive terms for all offenses of which defendant was convicted. It thus had no duty to make findings regarding aggravating and mitigating factors. The cases cited by defendant involved sentences of either greater or lesser terms than the presumptive and are therefore inapplicable. *Gardner*, 312 N.C. at 71, 320 S.E. 2d at 689; *Heath*, 77 N.C. App. at 272, 335 S.E. 2d at 355-56. Accordingly, this assignment of error is overruled.

[10] Defendant contends the court erred by finding that he did not qualify for a reduction of his sentence for trafficking in cocaine pursuant to N.C. Gen. Stat. 90-95(h)(5). N.C. Gen. Stat. 90-95(h)(5) permits the court to reduce a defendant's sentence when that defendant "has . . . provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals . . . ." Defendant does not specifically contend that he provided substantial assistance. Rather, citing *State v. Perkerol*, 77 N.C. App. 292, 335 S.E. 2d 60 (1985), he maintains that because the court did not grant his motion to continue the trial, he was denied a sufficient opportunity to provide authorities with information on drug trafficking.

In *Perkerol* the defendant offered to provide information to the District Attorney's Office on the morning of his sentencing hearing, and the Office declined the offer. *Perkerol*, 77 N.C. App. at 300, 335 S.E. 2d at 65. This Court remanded for a new sentencing hearing because one could interpret a statement by the sentencing court as an erroneous conclusion that defendant's offer of substantial assistance pursuant to N.C. Gen. Stat. 90-95(h) was not timely made. *Id.* The Court reasoned that "the statutory language 'has rendered . . . substantial assistance' commonsensically sets no time limit on when such assistance must be rendered." *Id.*

Unlike in *Perkerol*, the record here reveals no offer by defendant to provide assistance. Defendant's argument actually concerns ineffective assistance of counsel, and it fails for the reasons set forth above in our discussion of the court's denial of defendant's motion for a continuance. Accordingly, this assignment of error is overruled.

[11] Defendant contends the court erred in ordering that $5,900 in United States currency found on his person at the time of his

arrest should be forfeited to the State under N.C. Gen. Stat. 90-112(a)(2). We agree.

N.C. Gen. Stat. 90-112(a)(2) provides: "The following shall be subject to forfeiture: . . . All money, raw material, products, and equipment of any kind which are acquired, used, or intended for use, in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance in violation of the provisions of this Article[.]" In *State v. McKinney*, 36 N.C. App. 614, 244 S.E. 2d 455 (1978), this Court expressly rejected the notion that currency could be subject to forfeiture under N.C. Gen. Stat. 90-112 "solely by virtue of being found in 'close proximity' to the controlled substance which the defendant was convicted of possessing." *McKinney*, 36 N.C. App. at 617, 244 S.E. 2d at 457. The State concedes that there is no evidence here showing that the money was "acquired, used or intended for use . . . ." in violation of N.C. Gen. Stat. 90-112(a) except for the fact that defendant possessed "a large quantity of cash at the time that he possessed a large quantity of narcotics . . . ."

Following the rationale of *McKinney*, mere possession of a large amount of money, together with narcotics, does not subject defendant to the forfeiture provision of N.C. Gen. Stat. 90-112. We thus hold that the court erred in ordering the forfeiture.

No error in the trial; order of forfeiture vacated.

Judges PHILLIPS and MARTIN concur.