**UNITED STATES of America, and Winston–Salem Police Department, Plaintiffs,**

v.

**Robert ALSTON, Jr., and the Winston–Salem/Forsyth County Board of Education, Defendants.**

**No. C–88–665–WS.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

May 9, 1989.

**379**

of cocaine with intent to sell and deliver it and intentionally maintaining a building in violation of the Controlled Substances Act (Act). N.C.Gen.Stat. §§ 90–95(a)(1), 90–108(a)(7) (1985).

The officers asked Special Agent Mertes of the Drug Enforcement Administration (DEA) to adopt their seizure of the cash. Agent Mertes reviewed the evidence obtained in the search and she determined that there existed probable cause to believe that the cash was proceeds traceable to illegal exchanges of narcotics and was held with the intent to facilitate other such exchanges. 21 U.S.C.A. § 881(a)(6) (West 1981). On 10 February 1987, Agent Mertes adopted the seizure of the cash; thereafter, the DEA initiated administrative forfeiture proceedings.

The prosecution of Alston began in the Forsyth County District Court. *State of North Carolina v. Alston*, 87 CR 2992/87 CR 07319. That action was dismissed on 15 April 1987. Upon motion, Judge Abner Alexander ordered on 23 April 1987 that Plaintiff Winston–Salem Police Department (Police Department) return the cash to Alston.

The DEA, having complied with all applicable statutes and regulations, declared on 24 April 1987 that the cash was forfeited to Plaintiff United States of America (government) pursuant to 19 U.S.C.A. § 1609 (West 1980 & Supp.1988). The Police Department filed on 3 March 1987 a request with the DEA seeking equitable distribution in the amount of eighty-five percent of the forfeited cash [less $30 "buy" money] pursuant to 21 U.S.C.A. § 881(e)(1)(A) (West Supp.1988), 19 U.S.C.A. § 1616a(c) (West Supp.1988). The DEA concurred with this request. On 20 May 1987, the United States Marshall issued a check in the amount of $9,016.80 to the Police Department.

On 30 September 1987, a jury found Alston guilty of violating the Act. On 1 October 1987, Judge Donald Stephens of the Forsyth County Superior Court ordered the Police Department to return the cash to Alston because the state had failed to dem-

Richard L. Robertson, Asst. U.S. Atty., Greensboro, N.C., for plaintiff.

Mary Claire McNaught, Public Safety Attorney, Winston–Salem, N.C., for plaintiff Winston–Salem Police Dept.

Douglas S. Punger, of Winston–Salem, N.C., for defendants.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

This matter is before the court on plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The court will grant the motion because there is no genuine issue as to any material fact and plaintiffs are entitled to a judgment as a matter of law.

### I.

The parties have agreed to the facts of this case.

Pursuant to a warrant, Winston–Salem police officers entered and searched a residence on 4 February 1987. The search produced weapons and twenty plastic bags containing cocaine. The officers also found that Defendant Robert Alston, Jr. (Alston) possessed keys to the residence and a total of $10,638 in cash (the cash). Alston was arrested and charged with the possession

onstrate that the cash was subject to forfeiture under General Statute § 90–112. This order was not served upon or carried out by the Police Department.

The state, through the District Attorneys Office, moved the Superior Court to rescind its order and to reconsider its disposition of the cash. On 30 March 1988, Judge Stephens modified the order by requiring the Police Department to forward the cash to the Clerk of Court to be held for further proceedings. The Police Department complied with this order under protest on 11 April 1988.

The government began this action against Alston on 29 June 1988 seeking declaratory relief based on the conflict between the orders issued by Judge Stephens and the administrative declaration of forfeiture entered by the DEA. In its amended complaint, the government named the Winston–Salem/Forsyth County Board of Education (Board) and the Police Department as defendants. The Police Department was realigned as a plaintiff. The Board admitted in its answer that the doctrine of res judicata precluded Alston's claim to the cash. Finally, the Attorney General of North Carolina has intervened, with the consent of the court, as *amicus curiae* in support of the government's position.

## II.

◼ The first issue presented is whether the state superior court had jurisdiction to enter the October 1987/March 1988 orders with respect to the cash.[1]

The DEA adopted the Police Department's seizure of the cash. The Board does not dispute that the government has the power to adopt local seizures generally or that the government had probable cause to adopt the cash in this case.[2] Notwithstanding these facts, the Board claims that because the state court assumed jurisdiction over the cash prior to the institution of this action, the state court may exercise its jurisdiction to the exclusion of other courts. This assertion is without merit.

By reason of the adoption principle, the cash is deemed to have been seized by the government and, thus, subject to federal jurisdiction as of 4 February 1987, the date of seizure. *The Caledonian,* 17 U.S. 100, 103, 4 Wheat. 100, 4 L.Ed. 523 (1819). Plaintiffs' reliance on 21 U.S.C.A. § 881(h) (West Supp.1988) to establish jurisdiction is misplaced. *United States v. $79,123.49 in United States Cash and Currency,* 830 F.2d 94, 99 (7th Cir.1987). Federal courts have original jurisdiction, exclusive of the state court's, over any action for forfeiture under federal law. 28 U.S.C.A. § 1355 (West 1976 & Supp.1988). Because the government had won the unseemly race to the res, the state superior court was without jurisdiction to issue any order concerning the disposition of the cash after the federal seizure. *United States v. $48,231 in United States Currency,* No. C–87–782–G, slip op. at 7 (M.D.N.C. Dec. 14, 1988) (Sharp, Mag.); *City of San Jose v. Superior Court,* 195 Cal.App.3d 743, 240 Cal. Rptr. 882 (1987); *Michigan State Police v. 33rd Dist. Court,* 138 Mich.App. 390, 360 N.W.2d 196 (1984); *cf. United States v.*

1. Neither party seems concerned with Judge Alexander's order of April 1987. This court assumes that the case was dismissed because the state district court did not have jurisdiction over the felony prosecution. N.C.Gen.Stat. §§ 7A-270 to 7A-272 (1986). Nonetheless, Judge Alexander's order does not alter the court's analysis of the case in light of the court's determination that the state courts were deprived of jurisdiction at the time of the seizure.

2. The Board does contest the authority of the Police Department to unilaterally request the DEA to adopt its seizures. General Statute § 15-11.1(a) states that officers "shall safely keep the [seized] property under the direction of the court or magistrate." Assuming that the

Police Department violated Section 15-11.1(a) in this case (the cash, however, was never entered into evidence as part of the criminal prosecution of Alston), the federal adoption remains valid. Since the government may adopt a seizure even where the person seizing the property had no authority to make the seizure, *United States v. One Ford Coupe Automobile,* 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926), it follows that the government may adopt a seizure where there was no authority to transfer the property. *See also* Brief of *Amicus Curiae* at 5 (position of state attorney general is that this section "does not preclude evidence of ownership by the federal government nor the determination of property rights by the federal courts").

*One 1985 Cadillac Seville,* 866 F.2d 1142, 1144–46 (9th Cir.1989) (federal court precluded from exercising jurisdiction over monies due to pending state court proceeding).

### III.

▮ Assuming that the state court was deprived of jurisdiction, the Board argues that Section 1616a establishes a preference for discontinuing federal forfeiture proceedings in favor of forfeiture under state law. This preference, however, is not mandatory. The statute provides that the Attorney General *may* either discontinue or dismiss forfeiture proceedings under Section 1616a(b) or use the equitable sharing provisions of Section 1616a(c). The facts of this case preclude a finding that this discretion was abused.

Assuming the cash was subject to forfeiture,[3] the Police Department was not required to request the North Carolina Department of Justice to take custody of it for disposition under state law. N.C.Gen. Stat. § 90–112(c)(3) (1985). Rather, the Police Department sought federal adoption of the seizure. Thereafter the government began administrative forfeiture proceedings against the cash. At no time has the state sought forfeiture of the cash. Accordingly, the Attorney General did not abuse his discretion in using the equitable sharing provisions in the absence of a competing, state forfeiture proceeding.

### IV.

▮ The next issue is whether federal and state laws conflict. Article IX, section 7, of the North Carolina Constitution states in relevant part that "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools." Section 881 provides that forfeited property may be transferred to any state or local agency pursuant to Section 1616a. Section 1616a, in turn, provides that the property may be transferred to any participating state or local *law enforcement agency.* To avoid a positive conflict, 21 U.S.C.A. § 903 (West 1981), the Board asserts that a consistent reading of federal and state law would require that the cash be transferred to Forsyth County to be appropriated for the exclusive use of its schools. In other words, the spoils should go to the schools.

Plaintiffs and the Attorney General of North Carolina claim that these statutes are not in conflict in that each is directed to separate property subject to forfeiture, i.e., federally forfeited property and state forfeited property. The court agrees. Section 7 "applies only to forfeitures resulting from a breach of the *penal laws of North Carolina,* and has absolutely no application to forfeitures proceeding from a breach of any federal law." 47 Ops. Att'y Gen. 1 (1988) (emphasis added). The cash was administratively forfeited because the government concluded that probable cause existed that it was used in violation of Section 881(a)(6), a federal law. When cash is forfeited under these circumstances, "local law enforcement may share in the proceeds."[4] *Id.*

### V.

▮ The Board's final argument involves the broad claim that Congress did not intend the Comprehensive Drug Abuse Prevention and Control Act of 1970 and the Tariff Act of 1930, as amended, to be used as a means of circumventing state laws.[5]

---

3. N.C.Gen.Stat. § 90–112(a)(2) (1985); *State v. Teasley,* 82 N.C.App. 150, 346 S.E.2d 227 (1986), *disc. rev. denied,* 318 N.C. 701, 351 S.E.2d 759 (1987).

4. The government attempts to ameliorate the result reached in this case by providing the court with the Attorney General's Guidelines for Seized and Forfeited Property. The guidelines permit forfeited funds to be "passed through" to local school systems to finance drug abuse prevention and demand reduction programs.

5. The Anti–Drug Abuse Act of 1988, Pub.L. 100–690, § 6077, 102 Stat. 4181, 4324–25 (1988) (to be codified at 21 U.S.C. § 881(e)(3)(B)) provides that the Attorney General shall assure that any property transferred pursuant to the equitable sharing provisions will not "circumvent any requirement of State law that prohibits forfeiture

According to the Board, the inclusion of the word "participated" in Section 1616a(c) reflects Congressional intent "to encourage and reward cooperative law enforcement operations and criminal investigations." Brief at 12. The Board urges the court to read Section 1616a(c) as requiring direct participation between federal and local authorities in the seizure of property subject to forfeiture before local law enforcement agencies can use the federal forfeiture laws. Otherwise the state public schools would be deprived of funds because local law enforcement officials who seize property without federal assistance would bypass state forfeiture laws in favor of federal forfeiture laws which permit equitable sharing.

The court does not dispute the fact that Section 1616a(c) requires direct participation between federal and local law enforcement agencies. That participation, however, can occur either "in the seizure *or* forfeiture of the property." 19 U.S.C.A. § 1616a(c) (West Supp.1988) (emphasis added). In this case, there is no evidence that federal agents participated in the investigation or the subsequent seizure of the cash. Yet the Police Department participated directly in the forfeiture of the cash. The Police Department requested that the government adopt its seizure. Adoption is the first and an integral step in the forfeiture of the cash.

### VI.

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted. Accordingly, the Police Department has clear title to the cash. An order will be entered.

or limits use or disposition of property forfeited to State or local agencies." Because this law becomes effective 30 September 1989, it has no affect on this case. The court expresses no opinion as to the effects this legislation will have on future cases.