STATE OF NORTH CAROLINA v. JASON OLEEN BROOKS

No. 8620SC365

(Filed 4 November 1986)

1. **Criminal Law § 91— continuance to prepare for trial—no affidavits filed—continuance properly denied**

In a prosecution of defendant for possession with intent to sell and deliver and sale and delivery of cocaine, the trial court did not err in denying defendant's motions for continuance at the commencement of trial where defendant stated that he needed additional time to obtain an independent chemical analysis of the white powder sold to an undercover agent and additional time to allow his counsel to review the transcript of the probable cause hearing for the principals in the crimes charged, but he filed no affidavits in support of his motions and showed no prejudice from the denial of the continuance.

2. **Bills of Discovery § 6— confession by alleged codefendant—no recess**

The trial court did not err in failing to grant defendant's motion for a recess where defendant alleged that the State failed to provide a statement of a codefendant which it intended to offer at trial, but the witness to whose testimony defendant objected was not a codefendant in a joint trial. N.C.G.S. §§ 15A-903(b), 15A-910(2).

3. **Constitutional Law § 30; Criminal Law § 89.8— promises to perpetrator—statement by perpetrator—failure to disclose promises to defendant—defendant not prejudiced**

Though the State failed to comply with N.C.G.S. § 15A-1054(c) by not disclosing to defendant that a law enforcement official had promised to speak to the district attorney on a witness's behalf and see what he could do regarding a reduction in her sentence in exchange for her "truthful" testimony against defendant, and though the trial court erred in failing to grant a recess when the information became known, such error was not prejudicial where the

court did provide defense counsel with an extended lunch recess to enable him to prepare his cross-examination of the witness, and defendant ultimately was able to attack the credibility of the witness's testimony through the testimony elicited from the law enforcement official on cross-examination.

**4. Criminal Law § 42.6— cocaine—chain of custody—admissibility**

The State sufficiently established the chain of custody of two plastic bags of cocaine to permit their admission into evidence where an undercover SBI agent testified that he received the two bags from a named person on the morning of 18 June and kept them on his person until he delivered them to a detective in the Sheriff's Department; the detective testified that he received the bags from the SBI agent on the morning of 18 June and that he marked the date and initialed them; and the SBI agent testified that he was absolutely certain that the bags introduced into evidence were the same bags which he had turned over to the detective on 18 June.

**5. Criminal Law § 79— defendant as aider and abettor—testimony by perpetrator admissible**

In a prosecution of defendant for possession with intent to sell and deliver and delivery of cocaine where the State prosecuted defendant on the theory that he was an aider and abettor, the trial court did not err in admitting evidence that one of the principals had conversations with defendant concerning cocaine when she first met him and that defendant and his wife were present at the principals' house the night an SBI agent first contacted them about purchasing cocaine, since such evidence was relevant to show defendant's motive, presence, and relationship to the actual perpetrators, as well as guilty knowledge. N.C.G.S. § 8C-1, Rules 401 and 403.

**6. Criminal Law § 79— defendant as aider and abettor—statements by perpetrator—order of testimony immaterial**

The trial court did not err by allowing an SBI agent to testify concerning statements made by the actual perpetrators of the crime charged and by allowing one perpetrator to testify about statements made by defendant, since the State's evidence established a *prima facie* case of conspiracy, and it was immaterial whether the testimony of acts or declarations of a co-conspirator was admitted before or after the conspiracy was established. N.C.G.S. § 8C-1, Rule 801(d).

**7. Narcotics § 4— possession with intent to sell and deliver and delivery of cocaine—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for possession with intent to sell and deliver and delivery of cocaine where it tended to show that one perpetrator asked defendant to lend her husband his truck or take him to get some cocaine; defendant followed the perpetrator back to her house where her husband entered defendant's truck and the two left; when the two returned, the husband indicated to his wife, with defendant present, that he and defendant had gone to Charlotte and purchased cocaine there; the husband, wife and defendant returned to defendant's residence to use more cocaine and weigh out cocaine on a scale in the kitchen; and the husband then left to deliver cocaine to the undercover SBI agent.

**8. Criminal Law § 138.14— maximum sentence—one aggravating factor—no mitigating factors—sentence proper**

   The trial court properly found that the aggravating circumstance of prior convictions, in the absence of any factor in mitigation, warranted the imposition of a maximum term of ten years for sale and delivery of cocaine.

APPEAL by defendant from *Freeman, Judge*. Judgments entered 7 November 1985 in UNION County Superior Court. Heard in the Court of Appeals 20 October 1986.

Defendant was charged in separate indictments with possession with intent to sell and deliver cocaine and sale and delivery of cocaine in violation of N.C. Gen. Stat. § 90-95(a)(1). Defendant was tried on the theory that he was an aider and abettor in the commission of these offenses. The State's evidence tended to show, in pertinent part, that:

On 17 June 1985, while working undercover, Agent Hawkins of the State Bureau of Investigation contacted Ronald McManus about purchasing some cocaine. Hawkins had purchased cocaine from McManus approximately one week before. Hawkins arrived around midnight at the McManus residence with Linda McNamee, an informant. Hawkins and McNamee met with McManus and his wife, Pam, who was also present. Hawkins asked Ronald to get him an ounce and an eighth of cocaine. Ronald indicated that he needed to make arrangements right away because "his man would not deal if it got too late." Pam then announced that she would go get defendant, whom she referred to as "the man in the blue and white Blazer." The McManuses had agreed earlier that she would contact defendant and ask him to drive her husband or lend her husband his truck so that he could obtain the cocaine. Hawkins paid Ronald McManus $2,200 for the cocaine, and then he and Linda McNamee left.

Pam McManus went to defendant's house and relayed her husband's message to him. Defendant asked, "Is he really going to do it, Pam?" and then laughed. Pam answered affirmatively, and defendant indicated that he would go to her house. Defendant also stated that he would remain in his truck because he "did not want these people [Hawkins and McNamee] to see him." When defendant arrived, Ronald entered his truck and told Pam that they would return around 2:00 a.m.

Pam began to worry when her husband and defendant did not return. She went out looking for them and ultimately found them at another friend's house. Both men were "high" on cocaine. Ronald stated that they had been to Charlotte, visited a friend of Ronald's, and purchased cocaine.

Ronald, Pam, and defendant drove to a nearby field in defendant's truck where defendant injected Pam with cocaine. The three then returned to defendant's house where they used more cocaine. During this time, defendant's wife, Nora, weighed out cocaine on a scale in the kitchen.

Ronald called Agent Hawkins around 7:30 a.m. and arranged for the delivery of the cocaine at a car wash in Monroe. Ronald and Pam met Hawkins at the car wash around 8:00 a.m. Hawkins entered their car, and, while the three drove around the area, Ronald handed him two plastic baggies containing white powder. Hawkins transferred the bags to Detective Blume of the Union County Sheriff's Department. Blume, in turn, sent the bags to an S.B.I. laboratory where a chemical analysis showed that the white powder in the bags contained cocaine.

Defendant presented evidence through Ronald McManus and others that he had no involvement in the cocaine sale to Agent Hawkins.

At the commencement of trial, the court denied defendant's motions for a continuance. The court also denied defendant's motion for a recess when the State called Pam McManus as a witness and denied defendant's motion to dismiss at the close of all the evidence.

The jury returned verdicts of guilty on all charges. Defendant appealed from judgments of imprisonment.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Daniel F. McLawhorn, for the State.*

*W. David McSheehan for defendant-appellant.*

WELLS, Judge.

[1] Defendant contends the trial court erred in denying his motions for a continuance at the commencement of his trial. Defendant did not submit an affidavit in support of these motions.

Counsel for defendant simply stated that he needed time to examine what had been produced in discovery. In particular, counsel stated that he needed additional time in order to obtain an independent chemical analysis of the white powder sold to Agent Hawkins.

Defendant contends on appeal that because the court refused to grant his motions for a continuance, he was denied his constitutional right to effective assistance of counsel in that he was not given a reasonable time to investigate and prepare his case. We disagree.

Ordinarily, a motion for a continuance is a matter within the trial court's discretion, and thus any ruling is not reversible absent an abuse of discretion. *State v. Massey*, 316 N.C. 558, 342 S.E. 2d 811 (1986). However, if a motion to continue is based on a constitutional right as is the case here, then it presents a question of law which is fully reviewable on appeal. *Id.* See also *State v. Covington*, 317 N.C. 127, 343 S.E. 2d 524 (1986). "A motion for a continuance should be supported by an affidavit showing sufficient grounds for the continuance." *State v. Kuplen*, 316 N.C. 387, 343 S.E. 2d 793 (1986). "A continuance is proper if there is a belief that *material* evidence will come to light and such belief is reasonably grounded on known facts, but a mere intangible hope that something helpful to a litigant may possibly turn up affords no sufficient basis for delaying a trial." *State v. Pollock*, 56 N.C. App. 692, 289 S.E. 2d 588, *appeal dismissed*, 305 N.C. 590, 292 S.E. 2d 573 (1982), *citing State v. Tolley*, 290 N.C. 349, 226 S.E. 2d 353 (1976). Even if a trial court erroneously denies a motion for a continuance, a defendant still must show that he was prejudiced thereby. *Massey, supra.*

We hold that the defendant has not shown that the denial of his motions for a continuance was prejudicial error or an abuse of the trial court's discretion. Defendant filed no affidavits in support of his motions. We could surmise that, by conducting his own analysis, defendant sought to challenge the State's contention that the white powder sold to Agent Hawkins was indeed cocaine. However, defendant offered evidence through the direct testimony of Ronald McManus that the white powder sold to Agent Hawkins was cocaine. The nature of the substance thus was never a material issue in the case.

Defendant also contends that his counsel lacked sufficient time to review the transcript of the probable cause hearing for Ronald and Pam McManus, which defendant requested during discovery and received two days before trial. Additionally, defendant contends that the "record . . . reflects that the time between the indictment and . . . trial . . . was insufficient for the [d]efendant to prepare any defense. . . ." However, in this regard neither of defendant's oral motions made at the commencement of trial was "supported by some form of detailed proof indicating sufficient grounds for . . . delay." *State v. Searles*, 304 N.C. 149, 282 S.E. 2d 430 (1981). Defendant raises these specific contentions for the first time on appeal. Further, defendant has not shown that counsel's performance at trial or prior to trial was in any way deficient. *See State v. Teasley*, 82 N.C. App. 150, 346 S.E. 2d 227 (1986). Accordingly, this assignment of error is overruled.

In a related assignment of error, defendant contends the trial court erred in denying his motion for a mistrial. Defendant argues that "because the trial court . . . erroneously denied his motion[s] for a continuance," he was entitled to a mistrial. This contention is premised on defendant's "continuance" argument, *supra*, and it fails for the reasons set forth in discussing that argument.

**[2]** Defendant contends the court erred in failing to grant his motion for a recess pursuant to N.C. Gen. Stat. § 15A-910(2). We disagree.

When the State called Pam McManus to testify, defendant moved for a recess arguing that the State had failed to comply with an order for discovery entered by the court on 5 November 1985. Specifically, defendant maintained that the State failed to comply with paragraph "c" of the 5 November Order which required the State to provide "[a]ll written, recorded, or oral statements of a codefendant which the State intends to offer at trial, as provided by G.S. 15A-903(b)." N.C. Gen. Stat. § 15A-903(b), however, is limited to joint trials of codefendants. Defendant acknowledges this limitation in G.S. 15A-903(b) but contends that the 5 November Order effectively modified this section, presumably by its failure to mention expressly the "joint trial" limitation. However, we disagree with defendant's interpretation of the 5 November Order and hold that G.S. 15A-903(b) is inapplicable because defendant and Pam McManus were not tried jointly.

[3] Defendant further contends that the court should have grant-
ed a recess pursuant to N.C. Gen. Stat. § 15A-1054(c) which pro-
vides as follows:

> When a prosecutor enters into any arrangement
> authorized by this section, written notice fully disclosing the
> terms of the arrangement must be provided to defense coun-
> sel, or to the defendant if not represented by counsel, against
> whom such testimony is to be offered, a reasonable time
> prior to any proceeding in which the person with whom the
> arrangement is made is expected to testify. Upon motion of
> the defendant or his counsel on grounds of surprise or for
> other good cause or when the interests of justice require, the
> court must grant a recess.

When the State called Pam McManus to testify, counsel for
defendant also moved for a recess pursuant to G.S. § 15A-1054 on
grounds of surprise. At this point, the prosecutor, counsel for
defendant and the court engaged in the following colloquy:

> [Counsel for defendant]: If it please the Court, under
> 15A-1054, subsection c, the prosecutor has not disclosed to us
> any terms of any arrangements that they have made with
> this lady.

> [State]: If Your Honor please, it appears that 15A-1054
> applies when an agreement has been made. There has been
> no agreement made at this time.

> [Counsel for defendant]: I believe we're entitled to ex-
> plore that possibility with her before she starts testifying.

> [State]: I do not see where he sees that in 1054.

> The Court: You're just stating as an officer of the court
> that there's been no agreement, no grant of immunity or
> charge reduction for this witness?

> [State]: No promises have been made to her at all, if
> Your Honor please.

> The Court: The Court will deny the motion.

On cross-examination Pam McManus testified as follows:

> Q. What promises, if any, have you been told by Mr.
> Hawkins or anyone else related to the State about what they
> would do for you if you testified?

A. Not any at all.

Q. Have you discussed that?

A. Have we discussed it?

Q. Yes, ma'am.

A. No.

Q. Have you asked them—when was it that you contacted the State about testifying?

A. Thursday, a week ago.

Q. Did you contact them or did they contact you?

A. I contacted them.

Q. And did you ask them if they were going to give you any help?

A. I asked for protection for my life.

Q. Did you ask them if they were going to give you any help or reduction or sentence concessions in this case?

A. No.

Q. You didn't mention that to them at all?

A. No.

She further testified:

Q. Is it not true, Ms. McManus, that the State has agreed to dismiss your case if you come up here and testify against this defendant?

A. No. It is not true.

•   •   •

Q. What have you hoped to gain in the way of a sentence reduction or a concession in your case from your testimony in this case?

A. I don't hope to gain nothing but my life.

Q. Your life?

A. Yes.

She also acknowledged that the State had provided her with protection, food and lodging and that it had paid for two long distance telephone calls which she made.

At the close of defendant's evidence the State recalled Agent Hawkins as a rebuttal witness. On cross-examination, Hawkins acknowledged that he had made several attempts to persuade Pam McManus to testify. In this regard, Hawkins also acknowledged that he made the same "offer" to both Pam and Ronald McManus, namely: "I can't promise you any concessions now, but I will speak to the prosecutor about your cooperation and see about a reduction in your sentence." Hawkins subsequently explained: "I told Ms. McManus that upon her truthful testimony in court to the statement that she did give me, that I would speak with the District Attorney regarding her assistance in this case . . . ."

In *State v. Lowery*, 318 N.C. 54, 347 S.E. 2d 729 (1986), defendant contended that the court abused its discretion by denying his motion for disclosure by the State of all promises and inducements offered to Vincent Johnson in return for his testimony at trial, pursuant to G.S. § 15A-1054(c). Our Supreme Court disagreed and held that defendant's rights under G.S. § 15A-1054(c) were not violated because

> [(1)] there [was] no formal agreement between the State and Vincent Johnson [and (2)] defendant's counsel was aware sufficiently in advance of trial that the witness was going to testify for the State under a hope of leniency to have brought out in cross-examination the circumstances under which the testimony was being offered.

*Lowery, supra.* The Court further explained:

> All of the evidence produced by the defendant and Small shows that Johnson and his attorney were cooperating with the prosecution without the benefit of a formal agreement but with the hope, perhaps even an expectation based upon familiarity with the District Attorney's practices, that if Johnson testified in the case against the defendant and Small, the State would enter into a plea bargain afterwards.

*Id.*

As in *Lowery, supra,* there is no evidence here of a formal agreement between the State and Pam McManus at the time she testified as a witness at defendant's trial. However, unlike in *Lowery,* a law enforcement official, Agent Hawkins, promised to speak to the district attorney on her behalf and see what he could do regarding a reduction in her sentence in exchange for her "truthful" testimony against defendant.

We have stated previously that: "Promises by prosecutors of assistance or leniency, even if tentative, might be interpreted by a witness as contingent upon the nature of his [or her] testimony." *State v. Spicer,* 50 N.C. App. 214, 273 S.E. 2d 521, *appeal dismissed,* 302 N.C. 401, 279 S.E. 2d 356 (1981). Similarly, this promise by Agent Hawkins may very well have induced Pam McManus to testify on behalf of the State and also may have influenced the nature of her testimony. Pam McManus' credibility as a witness was an important issue in the prosecution of defendant and any promise of assistance which might be interpreted by her as contingent upon the nature of her testimony was relevant to her credibility. We thus hold that the State failed to comply with G.S. § 15A-1054(c) by not disclosing this information. However, defendant ultimately was able to attack the credibility of the testimony of Pam McManus through the testimony elicited from Agent Hawkins on cross-examination as a rebuttal witness. Further, the record reflects that the court did provide counsel for defendant with an extended lunch recess to enable him to prepare his cross-examination of Ms. McManus.

We therefore hold that the court's failure to grant a recess in this instance does not constitute prejudicial error. We are not persuaded that had this error not been committed a different result would have been reached at trial. N.C. Gen. Stat. § 15A-1443(a). This assignment of error is overruled.

[4] Defendant contends the court erred in admitting two plastic bags containing the cocaine which Ronald McManus delivered to Hawkins (State's exhibits two and three), because the State failed to establish the requisite chain of custody. Defendant asserts that the State failed to identify these exhibits as the objects that Ronald McManus delivered to Hawkins. In particular, defendant emphasizes that Hawkins did not place any identifying marks on the bags and that some time elapsed between delivery of the bags

to Hawkins and the transfer of them from Hawkins to Detective Blume of the Union County Sheriff's Department. Defendant does not challenge the sufficiency of the evidence on chain of custody after the time of delivery to Blume.

We hold that the evidence presented by the State regarding the chain of custody " 'is sufficient to reasonably support the conclusion that the substance analyzed [was] the same as that obtained from defendant [and therefore] both the substance and the results of the analysis [were properly] admissible.' " *Teasley, supra, quoting State v. Callahan*, 77 N.C. App. 164, 334 S.E. 2d 424 (1985). In particular, Hawkins testified that he received the two bags containing white powder from Ronald McManus on the morning of 18 June and "kept [them] on [his] person . . ." until he delivered them to Blume. Blume testified that he received the bags from Hawkins on the morning of 18 June and that he marked the date and initialed them. Hawkins testified that he was absolutely certain that exhibits two and three were the same bags which he had turned over to Blume on 18 June. As in *Teasley, supra*, any weaknesses here in the chain of custody regarding the actions or inactions of Hawkins go to the weight rather than the admissibility of the evidence. This assignment of error is overruled.

Defendant contends that on three occasions the court "infringed on his right to full and effective cross-examination of the State's witness Pam McManus." Our review of these exceptions reveals no prejudicial error.

The scope of cross-examination is limited to those matters which are relevant to the issues before the jury. N.C. Gen. Stat. § 8C-1, Rule 611(b) of the N. C. Rules of Evidence; *State v. Hosey*, 79 N.C. App. 196, 339 S.E. 2d 414, *cert. granted*, 316 N.C. 382, 342 S.E. 2d 902 (1986). Further,

> The wide latitude accorded the cross-examiner "does not mean that all decisions with respect to cross-examination may be made by the cross-examiner." . . . Rather, the scope and duration of cross-examination rest largely in the discretion of the trial judge. . . . "The judge has discretion to ban unduly repetitious and argumentative questioning, as well as inquiry into matters of only tenuous relevance." [Citations omitted.]

*State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980).

Defendant contends the court improperly sustained the State's objection to his question regarding the kind of medication prescribed for the witness while she was "coming out of [her cocaine] addiction." Defendant also asserts that the court improperly sustained the State's objection to his question concerning the distance between the witness' house and downtown Monroe. The record indicates that the witness had already testified substantially on these matters during cross-examination.

Defendant lastly contends that the trial court improperly sustained the State's objection concerning the witness' clarity of mind since 18 June 1985. Assuming, *arguendo*, that this contention has some merit, defendant was not prejudiced thereby because the witness testified that cocaine caused her to lose control over her mind and that she had used cocaine after 18 June 1985. In sum, "We cannot say from an examination of this record that the [court] abused [its] discretion or deprived defendant of a fair trial by the rulings here challenged." *Satterfield, supra.* Accordingly, this assignment of error is overruled.

Defendant contends the court erred in refusing to grant his motion to strike all uncorroborative portions of a written statement from Pam McManus which was read to the jury by Agent Hawkins. The State offered the statement to corroborate the witness' testimony. Defendant neither moved to strike or exclude any specific part of the statement nor called "to the attention of the trial court the objectionable part" of the witness' statement. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977). Accordingly, defendant may not now object on appeal to the introduction of specific portions of the witness' statement. N.C. Gen. Stat. § 8C-1, Rule 103(a)(1); *Britt, supra. See also State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963). In any event, the portions of Ms. McManus' statement which defendant asserts are noncorroborative actually represent slight variations which do not render it inadmissible. *Britt, supra.* This assignment of error is overruled.

Defendant contends the court erred by admitting, over his objection, evidence "which lacked logical relevance and created the substantial danger of unfair prejudice to the defendant." Specifically, defendant asserts that the court should not have admitted evidence that: (1) Agent Hawkins had previously pur-

chased cocaine from Ronald McManus before the 17-18 June transaction; (2) Agent Hawkins told McManus on 17 June that he wanted to purchase additional amounts of cocaine; (3) Pam McManus had conversations with defendant concerning cocaine when she first met him; (4) Defendant and his wife were present at the McManuses' house the night Agent Hawkins first contacted them about purchasing cocaine; (5) Defendant kept "scales" at his residence; and (6) Defendant and Ronald McManus had a fist fight approximately nine years earlier. Defendant argues that this evidence should have been excluded under N.C. Gen. Stat. § 8C-1, Rules 401, 402 and 403. We disagree.

Regarding the first two items enumerated above, defendant has waived his right to raise on appeal his objections to this evidence because the same evidence was later admitted without objection. *State v. Chapman*, 294 N.C. 407, 241 S.E. 2d 667 (1978). Ronald McManus testified without objection that he sold cocaine to Agent Hawkins around 13 June and that Hawkins asked to purchase additional amounts of cocaine from him on 17 June. "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 319 S.E. 2d 584 (1984). Although the North Carolina Rules of Evidence do not address this rule explicitly, there is no indication that they are intending to change it. 1 Brandis on North Carolina Evidence § 30 (1983 Supp.). Brandis suggests that this rule simply illustrates the provision in N.C. Gen. Stat. § 8C-1, Rule 103(a) which requires an objecting party to show that the court's ruling affects a substantial right. *Id.*

[5] Regarding items 3, 4 and 5 above, we hold that this evidence was clearly admissible under G.S. 8C-1, Rules 401 and 403. In general, evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant. G.S. § 8C-1, Rule 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, conclusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. G.S. § 8C-1, Rule 403. Unfair prejudice has been defined as an undue tendency to suggest decision on an improper basis, commonly,

though not necessarily, an emotional one. Commentary to N.C. R. Evid. 403. Whether or not to exclude evidence under Rule 403 is a matter within the sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986).

The State prosecuted defendant on the theory that he was an aider and abettor in the commission of the crimes charged. This Court has stated that:

> Circumstances to be considered in determining whether a defendant aided and abetted the actual perpetrator of a crime include the following: (1) the relationship of the defendant to the actual perpetrator; (2) the motive tempting the defendant to assist in the crime; (3) presence of the defendant at the time and place of the crime; and (4) conduct of the defendant both before and after commission of the crime. [Citation omitted.]

*State v. Cassell*, 24 N.C. App. 717, 212 S.E. 2d 208, *appeal dismissed*, 287 N.C. 261, 214 S.E. 2d 433 (1975). Further, "the charge of possession with intent to sell involves guilty knowledge, which in drug cases ordinarily must be shown by circumstantial evidence indicating involvement in drug traffic." *State v. Shaw*, 53 N.C. App. 772, 281 S.E. 2d 702, *disc. rev. denied*, 304 N.C. 590, 289 S.E. 2d 565 (1981).

In light of the charges against defendant and the theory of prosecution we hold that this evidence was relevant in that it tended to show defendant's motive, presence, and relationship to the actual perpetrators, as well as guilty knowledge. *See Shaw, supra.* Further, we perceive no danger of unfair prejudice that substantially outweighed the probative value of this evidence. *State v. Teasley, supra.*

Lastly, we hold that the evidence concerning a prior altercation between defendant and Ronald McManus, though arguably not relevant, was not sufficiently prejudicial as to affect the outcome of the trial. Accordingly, this assignment of error is overruled.

[6] Defendant contends the court erred by allowing Agent Hawkins to testify concerning statements made by Ronald and Pam McManus and by allowing Pam McManus to testify about statements made by defendant. Specifically, defendant contends these

statements by defendant's co-conspirators, although made in fur-
therance of the conspiracy, were inadmissible because "the State
failed to demonstrate that a conspiracy existed between the de-
fendant and the codefendants *before* the State's witnesses testi-
fied to hearsay statements." (Emphasis added.) We disagree.

Defendant acknowledges that G.S. § 8C-1, Rule 801(d) pro-
vides that hearsay statements made by a co-conspirator in fur-
therance of the conspiracy are admissible when offered "against a
party . . ." as an exception to the hearsay rule. Further, our
Supreme Court has stated:

> When the State shows a *prima facie* conspiracy, the
> declarations of the co-conspirators in furtherance of the com-
> mon plan are competent against each of them. . . . This is so
> even where the defendants are not formally charged with a
> criminal conspiracy. [Citations omitted.]

*State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976).

The State's evidence here showed that defendant and the Mc-
Manuses were carrying out a plan or agreement to possess
cocaine with the intent to sell and deliver it and a plan or agree-
ment to sell and deliver it. This evidence established a *prima
facie* conspiracy. *See id.* Further, while a *prima facie* case of con-
spiracy must be made out before the close of the State's evidence,
"our courts often permit the State to offer the acts or declara-
tions of a co-conspirator before the *prima facie* case of conspiracy
is sufficiently established." *State v. Polk*, 309 N.C. 559, 308 S.E.
2d 296 (1983). The trial court thus properly admitted the state-
ments by defendant's co-conspirators. This assignment of error is
overruled.

[7] Defendant contends the trial court erred in denying his mo-
tions to dismiss, at the close of all the evidence, the charges of
possession of cocaine with intent to sell and deliver and sale and
delivery of cocaine in violation of G.S. § 90-95(a)(1). Relying on
*State v. Parker*, 268 N.C. 258, 150 S.E. 2d 428 (1966) and *State v.
LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1982), defendant contends
that:

> The State's entire case rested on the inference that since
> the defendant drove his truck to the house of Mr. McManus,
> picked up Mr. McManus as a passenger outside the McManus

house, and drove the truck away from the house, the defendant went to Charlotte with Mr. McManus and purchased an ounce and a half of cocaine.

However, through the testimony of Pam McManus, the State offered direct evidence of defendant's participation in the crimes charged. Pam McManus testified that on the night before Agent Hawkins bought the cocaine, she went to defendant's house and requested that he lend her husband his truck or take him to get some cocaine. Defendant followed Pam McManus back to her house where Ronald McManus entered defendant's truck and the two left. When the two returned, Ronald McManus indicated to his wife, with defendant present, that he and defendant had gone to Charlotte, and purchased cocaine there. Pam, Ronald and defendant returned to defendant's residence to use more cocaine and weigh out cocaine on a scale in the kitchen. Ronald McManus then left to deliver cocaine to Hawkins. The foregoing evidence shows that the State's case did not rest on inference but rather on direct evidence of defendant's participation. Defendant's argument thus is without merit. Accordingly, this assignment of error is overruled.

[8]  Defendant contends the court erred in sentencing him for his conviction for sale and delivery of cocaine to the maximum term of ten years. Specifically, defendant contends that the sole aggravating factor found, his prior convictions, is not sufficient to "support such a severe sentence." However, "[e]xcept for maximum sentence limitations in G.S. 14-1.1, the severity of a sentence imposed pursuant to the Fair Sentencing Act, insofar as it is based on a weighing of aggravating and mitigating factors is within the discretion of the judge." *State v. Salters*, 65 N.C. App. 31, 308 S.E. 2d 512 (1983), *disc. rev. denied*, 310 N.C. 479, 312 S.E. 2d 889 (1984). As in *Salters*, we hold that the court "properly found that this aggravating circumstance, in the absence of any factor in mitigation, warranted the imposition of a term that exceeded the presumptive." *Id.* Accordingly, this assignment of error is overruled.

No error.

Judges BECTON and ORR concur.