PRESTON POWELL AND RICHARD POWELL, PLAINTIFFS v. ALLAN T. OMLI, DEFENDANT AND THIRD-PARTY PLAINTIFF v. PEACHTREE FASTENERS, INC. AND SIMPLEX NAILS, INC., THIRD-PARTY DEFENDANTS

No. 9121SC1157

(Filed 1 June 1993)

1. **Negotiable Instruments and Other Commercial Paper § 117 (NCI4th) — action on a note — breach of fiduciary duty — failure of consideration — issue of fact**

The trial court erred by granting a directed verdict for plaintiffs in an action on a promissory note where defendant

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

contended that there had been a failure of consideration in plaintiffs' breach of fiduciary duty to defendant, plaintiffs argued that defendant had received full consideration in that he received the benefit of the money even though he never actually held the money, the note stated that "for value received" defendant promised to pay plaintiffs $100,000, and the note did not specify exactly what value defendant had received nor whether there were or were not any other agreements. This question should have been submitted to the jury.

**Am Jur 2d, Bills and Notes §§ 1296 et seq.**

2. **Negotiable Instruments and Other Commercial Paper § 117 (NCI4th)— action on a note—breach of fiduciary duty— consideration—new trial**

An action on a note was remanded for a new trial where the trial court had erroneously granted a directed verdict for plaintiffs, defendant contended that plaintiffs were not entitled to a new trial because the jury had found that plaintiffs had breached their fiduciary duties to defendant and defendant argued that this breach was the same as a finding of a failure of consideration, but there was evidence that the fiduciary duty did not serve as consideration for defendant's note.

**Am Jur 2d, Bills and Notes §§ 1296 et seq.**

3. **Appeal and Error § 147 (NCI4th); Damages § 127 (NCI4th)— breach of fiduciary duty—punitive damages—refusal to submit to jury**

The trial court did not err in an action on a note by refusing to submit to the jury the issue of plaintiffs' liability to defendant for punitive damages for breach of fiduciary duty. Defendant failed to object at trial, and, under controlling Georgia law, defendant failed to show clear and convincing evidence that defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

**Am Jur 2d, Appeal and Error §§ 545 et seq.; Damages §§ 994, 995.**

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

**4. Appeal and Error § 147 (NCI4th)— breach of fiduciary duty— instructions—failure to object to specific errors—appellate review waived—harmless error**

Plaintiffs waived appellate review of an alleged error in instructions to the jury on breach of fiduciary duty by failing to call the trial court's attention to the specific alleged errors in the jury charge. However, assuming as plaintiffs contended that the charge should have more closely reflected the language of Georgia cases, any error was harmless because there is no substantial difference between the Georgia and North Carolina cases regarding the treatment of minority stockholders in a close corporation in this context.

**Am Jur 2d, Appeal and Error §§ 545 et seq.**

**5. Fiduciaries § 1 (NCI4th)— breach of fiduciary duty—motion for directed verdict denied—no error**

The trial court did not err in a breach of fiduciary duty counterclaim by denying plaintiffs' motion for a directed verdict at the close of defendant's evidence where defendant presented ample evidence of plaintiffs' breach of fiduciary duty.

**Am Jur 2d, Appeal and Error § 849.**

**6. Appeal and Error § 156 (NCI4th)— subject matter jurisdiction—lack of proper party—no motion to dismiss**

An assignment of error to the denial of a motion to dismiss for lack of subject matter jurisdiction in that proper parties were not joined failed where plaintiffs failed to make a motion to dismiss for lack of subject matter jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1) and the trial court was denied the opportunity to rule on that motion. The record reflects that, after stipulating in the order on final pretrial conference that there were no pending motions, plaintiffs moved at trial to dismiss the action pursuant to N.C.G.S. § 1A-1, Rule 17 and N.C.G.S. § 1A-1, Rule 19 for failure to join a necessary party. The denial of those motions was not assigned as error.

**Am Jur 2d, Appeal and Error §§ 562 et seq.**

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

7. **Appeal and Error § 147 (NCI4th); Evidence and Witnesses §§ 2154, 2148 (NCI4th) — breach of fiduciary duty — report of financial consultant — admitted without timely objection — consultant qualified — report relevant**

There was no prejudicial error in the admission of a report from a financial consultant in an action arising from the failure of a company where defendants counterclaimed for breach of fiduciary duty where the report was listed in the order on final pretrial conference, one of the plaintiffs testified about the report during cross-examination, the consultant testified as to the report's preparation and contents, the report was admitted into evidence, the next witness was asked four questions, and plaintiffs made a general objection to the admission of the report. A general objection which is overruled is generally not effective on appeal, plaintiffs failed to make a timely objection, the qualifications of the witness indicate that the court did not err in admitting the report, and the report was relevant.

Am Jur 2d, Appeal and Error §§ 545 et seq.; Expert and Opinion Evidence §§ 5 et seq., 32-38, 55 et seq.

8. **Appeal and Error § 421 (NCI4th) — admission of evidence — objection that exhibit and testimony speculative and self-serving — different grounds argued in brief**

Plaintiffs could not argue on appeal that testimony and an exhibit constituted the improper opinion of a lay witness where they had made a specific objection at trial based upon the allegedly speculative and self-serving nature of defendant's exhibit and testimony.

Am Jur 2d, Appeal and Error §§ 691 et seq.

9. **Evidence and Witnesses § 761 (NCI4th) — testimony from notes not admitted into evidence — substance already admitted — no prejudicial error**

Any error was harmless where a defendant in an action arising from the failure of a business testified from personal notes not introduced where plaintiffs did not request to see the notes, plaintiffs did not cross-examine defendant regarding the notes, plaintiffs failed to have the notes marked at trial for preservation in the record, plaintiffs failed to include the notes in the record on appeal, and the components largely

constituting the figure allegedly read into evidence from an unidentified note had already been introduced into evidence.

**Am Jur 2d, Appeal and Error § 806.**

**10. Evidence and Witnesses § 2047 (NCI4th) — failure of business — testimony of potential investor — allegedly speculative — admissible**

There was no error in an action arising from the failure of a business in allowing a witness to testify that he would have invested in the business if he had received an up-to-date financial statement. Although plaintiffs contend that the testimony was speculative, it was admissible under N.C.G.S. § 8C-1, Rule 701 since it was based on the witness's perceptions and was helpful to the jury. It was relevant to defendant's earlier testimony regarding his difficulty in obtaining current financial statements and to show defendant's attempts to mitigate his losses by showing his efforts to bring in investors.

**Am Jur 2d, Expert and Opinion Evidence §§ 26 et seq., 53, 54, 362.**

Appeal by plaintiffs and defendant from judgment filed 10 June 1991 by Judge Preston Cornelius in Forsyth County Superior Court. Heard in the Court of Appeals 22 October 1992.

Plaintiffs, Georgia residents, are the owners of Simplex Nails, Inc., a Georgia corporation which manufactures nails. After negotiations in Winston-Salem, plaintiffs and defendant, a North Carolina resident, entered into an agreement to form Peachtree Fasteners, Inc., (hereinafter "Peachtree") which would produce and sell collated nails. Peachtree was incorporated under Georgia law on 3 August 1987, with headquarters in Americus, Georgia. Defendant and each plaintiff agreed to contribute $100,000.00 in exchange for each receiving a one-third ownership interest in Peachtree. Since defendant did not have $100,000.00 in cash, defendant gave plaintiffs a $100,000.00 promissory note payable to plaintiffs upon demand "secured by a security interest in the undersigned's [defendant's] partnership interest in FY-OM Partnership, a North Carolina general partnership." The security interest was properly perfected under North Carolina law. Of the initial $300,000.00 in capital, $250,000.00 was used to buy equipment and $50,000.00 was

used as working capital. In addition to being a stockholder and director, defendant was hired as president of Peachtree.

Peachtree eventually failed. Each party alleged different reasons for the failure. Plaintiffs' evidence tended to show the following: Peachtree struggled because wholesalers would not purchase the collated nails. Peachtree established two subsidiaries, Advanced Fasteners in Waycross, Georgia, and Sun Supply in Doraville, Georgia, in an attempt to sell the collated nails directly to subcontractors. Plaintiffs contended that Peachtree was not profitable because it was unable to produce a competitive product. Plaintiffs also introduced evidence that defendant previously had been a minority shareholder in another corporation, Federal Fasteners, which also sold collated nails and experienced financial difficulties.

Plaintiffs offered to sell Peachtree to defendant, but defendant was unable to secure the necessary funds. Plaintiffs' evidence further showed that Simplex had to loan money to Peachtree so that Peachtree could pay its debts. Additionally, plaintiff Richard Powell had to personally guarantee a loan to Peachtree, secured by the collator equipment, to provide additional funds for Peachtree to pay its debts. Eventually, the collator equipment had to be sold to pay creditors.

Defendant's evidence tended to show the following: plaintiffs agreed that Peachtree and Simplex would be operated as separate businesses, that defendant would be treated fairly, and that plaintiffs would make Peachtree prosper. Although he was hired as Peachtree's president, defendant's decisions were not followed because plaintiff Richard Powell controlled decisions regarding Peachtree's operations and finances. For example, the creation of Advanced Fasteners, against defendant's judgment, caused financial losses. Loans from Simplex, the corporation owned by plaintiffs, were made to Peachtree at plaintiff Richard Powell's direction without the formal approval of either corporation, without appropriate accounting records, and without defendant's consent or knowledge. Simplex's expenses were often charged to Peachtree and when common customers paid their bills, Simplex was paid first. Funds from Sun Supply, Peachtree's subsidiary, were withdrawn by plaintiffs without appropriate accounting records. Despite their offer to sell Peachtree to defendant and defendant's efforts to attract investors, plaintiffs refused to give defendant current financial information regarding Peachtree's true net worth.

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

When defendant was fired as president in October 1988, Peachtree's balance sheet showed a stockholders' equity of $181,932.32. Defendant offered evidence that the balance sheet was inaccurate. Defendant's evidence tended to show that the figure on the balance sheet was incorrect largely because Peachtree had paid for many of Simplex's expenses. Thereafter, defendant remained a shareholder and director of Peachtree. Approximately one month after defendant was fired and without defendant's knowledge or consent, plaintiffs caused Peachtree to borrow $250,000.00 and to encumber the collators as security. The $250,000.00 was paid either to Simplex or to plaintiffs directly. Additionally, in December 1988 plaintiffs, without defendant's knowledge or consent, caused Peachtree to sell the collators for $255,000.00 to pay off the Simplex debts. When Peachtree's operations ceased in July 1990, the stockholders' equity had a deficit of $114,171.40.

On 28 November 1988, plaintiffs made a formal demand upon defendant for payment of the $100,000.00 promissory note. Defendant refused payment. Plaintiffs sued on the note by filing a verified complaint in Forsyth County Superior Court on 3 May 1989. On 7 July 1989, defendant answered alleging *inter alia* failure of consideration. Additionally, defendant counterclaimed alleging *inter alia* the claims of fraud and a breach of fiduciary duty by plaintiffs. A jury trial was held on 13 May 1991. The trial court entered a directed verdict against defendant on the promissory note. The value of plaintiffs' claim on the note, including principal, interest, and attorney's fees, was $170,488.46. On 16 May 1991, the jury found that plaintiffs breached a fiduciary duty to defendant, awarding defendant an offset of $60,250.00 against plaintiffs' note claim. After the offset (and its prejudgment interest), plaintiffs received an award of $101,238.46. On 10 June 1991, the trial court denied defendant's motion for a new trial. Plaintiffs and defendant each appeal.

*John R. Surratt, P.A., by John R. Surratt and Andrew J. Gerber, for plaintiffs.*

*Craige, Brawley, Liipfert & Ross, by William W. Walker, for defendant.*

EAGLES, Judge.

Defendant brings forward three assignments of error. We reverse the entry of directed verdict against defendant on the

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

promissory note. Plaintiffs bring forward seven assignments of error. As to plaintiffs' appeal, we affirm. Accordingly, we affirm in part, reverse in part, and remand for a new trial to determine the issue of defendant's alleged liability on the promissory note.

DEFENDANT'S APPEAL

I.

[1]   In his first assignment of error, defendant contends that the trial court erred by granting plaintiffs' motion for directed verdict on the promissory note. We agree.

Defendant argues that in the determination of his liability on the promissory note "[t]here was a material issue of fact on whether defendant had proven his defense that, because plaintiffs had breached their fiduciary duty to defendant as majority shareholders, there had been a failure of consideration." Defendant gave a $100,000.00 promissory note to plaintiffs. This note read in pertinent part as follows:

FOR VALUE RECEIVED the undersigned, jointly and severally, promise to pay to Richard Powell and Preston Powell of Americus, Georgia or order, the principal sum of One Hundred Thousand and no/100ths DOLLARS ($100,000.00), with interest from the date hereof at the rate of Prime plus One per cent (prime +1.0% based on 1st National Bank of Atlanta as the same fluctuates from time to time) per annum/on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at the office of Simplex Nail Company, Americus, Georgia or at such place as the legal holder hereof may designate in writing.

Plaintiffs argue that although "defendant never actually held the money, he did receive the benefit from the money. Defendant authorized plaintiffs to use this borrowed $100,000.00 as capital for Peachtree. . . . As defendant received the benefit of the money promised him, he received full consideration in accordance with the terms of the note." Plaintiffs further argue that "their fiduciary duty to him [defendant] was not bargained for, nor made part of their agreement to loan defendant $100,000.00." However, plaintiffs' argument, *supra,* is not evident from the face of the note. The promissory note simply stated that "for value received" defend-

ant promised to pay plaintiffs $100,000.00; the note did not specify exactly what "value" defendant had "received" nor did it specify whether there were or were not any other agreements. Accordingly, we hold that this question should have been submitted to the jury.

In *Whitehurst v. Corey*, 88 N.C. App. 746, 748-49, 364 S.E.2d 728, 730 (1988), this Court, in overturning a trial court's award of summary judgment in a similar case, stated:

> "[I]t is rather common for a promissory note to be intended as only a partial integration of the agreement in pursuance of which it was given, and parol evidence as between the original parties may well be admissible so far as it is not inconsistent with the express terms of the note." *Borden, Inc. v. Brower*, 284 N.C. 54, 61, 199 S.E.2d 414, 419-20 (1973).
>
> Construing defendants' verified pleadings in their favor as non-movant reveals a material fact dispute concerning the alleged existence and effect of a fiduciary relationship between plaintiff and defendants. These alleged facts are clearly "material" since plaintiff's performance of the alleged fiduciary duties was allegedly part of the consideration for defendants' execution of the promissory note. We also reject plaintiff's argument that defendants have alleged no facts showing detrimental reliance in support of their apparent fraud claim. Defendants' purchase of plaintiff's stock may well evidence their detrimental reliance on plaintiff's alleged representations concerning his intended fiduciary obligations.

Similarly, we conclude that when the evidence presented at trial is viewed in the light most favorable to the non-movant (defendant), a question of fact existed which could only be resolved by a jury. Accordingly, we reverse the trial court's entry of directed verdict on this issue.

II.

[2]  Next, defendant argues that "[p]laintiffs are not entitled to a new trial on their note claim because the jury has already found that plaintiffs breached their fiduciary duties to defendant, and that finding is the same as a finding that there was a failure of consideration, which nullifies the agreement under which defendant gave plaintiffs his note." We disagree.

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

Although defendant correctly points out that the jury found that plaintiffs breached their fiduciary duty, defendant fails to recognize that contrary evidence exists as to this issue; namely, that plaintiffs have brought forth testimony showing that this fiduciary duty did not serve as consideration for defendant's note. Contrary to defendant's assertion, the jury's verdict finding plaintiffs' breach of fiduciary duty does not necessarily infer that the parties had a contemporaneous oral agreement establishing plaintiffs' fiduciary duty to defendant as consideration for defendant's note. Accordingly, we remand for a new trial on this issue.

### III.

[3]  Finally, defendant argues that "[t]he trial court erred in refusing to submit to the jury the issue of plaintiffs' liability to defendant for punitive damages for breach of fiduciary duty." We disagree.

Defendant failed to object to the trial court's denial of his request for a punitive damages charge and accordingly cannot contest this issue on appeal. N.C.R. App. P. 10(b)(2). Furthermore, defendant concedes that Georgia law controls his counterclaim. Ga. Code Ann. 51-12-5.1(b) (Michie Cum. Supp. 1992) provides that punitive damages may only be awarded when "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Here, defendant has failed to show the "clear and convincing evidence" required by Ga. Code Ann. 51-12-5.1(b) (Michie Cum. Supp. 1992). Accordingly, this assignment of error fails. We note that in "defendant's requests for jury instructions" filed 16 May 1991 defendant did not request an instruction for his fraud counterclaim.

### PLAINTIFFS' APPEAL

### IV.

[4]  Plaintiffs argue that the trial court committed prejudicial error by presenting an erroneous view of the law regarding breach of fiduciary duty in its instruction to the jury by basing the instruction on *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983) rather than on several Georgia cases cited in plaintiffs' brief. We disagree.

Defendant argues that "plaintiffs did not object specifically to this part of the charge, as required by Rule 10(b)(2), N.C.R. App. P., and therefore did not give Judge Cornelius a chance to consider the point plaintiffs now raise on appeal." After hearing the proposed instructions read to counsel for both parties, plaintiffs objected as follows:

MR. SURRATT [plaintiffs' counsel]: Your Honor, we object and except the instructions.

THE COURT: What are you excepting to?

MR. GERBER [plaintiffs' counsel]: Your Honor, I don't believe under Georgia law—

THE COURT: We're not talking about Georgia law. It's North Carolina law.

MR. GERBER: It's our contention Georgia law would apply and there's no unreasonable frustration in this matter.

THE COURT: You already made that argument. The Court's ruled on that. Any others? What other exception do you note for the record?

MR. GERBER: That's all, Your Honor.

N.C.R. App. P. 10(b)(2) provides that "A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly* that to which he objects *and* the *grounds* of his objection." (Emphasis added.) By failing to call the trial court's attention to the specific alleged errors in the jury charge, plaintiffs have waived their right to appellate review. N.C.R. App. P. 10(b)(2); *Donavant v. Hudspeth*, 318 N.C. 1, 347 S.E.2d 797 (1986); *Durham v. Quincy Mutual Fire Ins. Co.*, 311 N.C. 361, 317 S.E.2d 372 (1984). Assuming *arguendo* that the instruction should have more closely reflected the exact language of the Georgia cases, we find any error to be harmless under G.S. 1A-1, Rule 61 since there is no substantial difference between the Georgia and North Carolina cases regarding the treatment of minority stockholders in a close corporation in this context. *See Meiselman*, 309 N.C. 279, 307 S.E.2d 551; *Comolli v. Comolli*, 241 Ga. 471, 246 S.E.2d 278 (1978). Plaintiffs have failed to show that the alleged error in the instruction was likely, in light of the entire charge, to mislead the jury. *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 361 S.E.2d 909

(1987), *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988). Accordingly, this assignment of error fails.

### V.

[5] Plaintiffs contend that the trial court committed reversible error by denying their motion for a directed verdict on defendant's breach of fiduciary duty claim at the close of defendant's evidence. We disagree.

In *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 665, 391 S.E.2d 831, 832 (1990), this Court stated:

> A motion for directed verdict pursuant to Rule 50(a) of the North Carolina Rules of Civil Procedure presents the question of whether plaintiff's evidence is sufficient to submit to the jury. The trial court must consider the evidence in the light most favorable to the non-movant and conflicts in the evidence must be resolved in favor of the non-movant. Whether a fiduciary relationship exists is determined by the specific facts and circumstances of the case. Generally, "[t]he existence or nonexistence of a fiduciary duty [is] a question of *fact* for the jury."

(Emphasis in original.) (Alterations in original.) (Citations omitted.) Defendant presented ample evidence of plaintiffs' breach of fiduciary duty. Accordingly, the trial court did not err in denying plaintiffs' motion for a directed verdict on this claim at the close of defendant's evidence.

### VI.

[6] Plaintiffs' third assignment of error provides "[p]laintiffs assign as error: (3) The court's denial of plaintiffs' Motion for lack of subject matter jurisdiction, pursuant to N.C.R. Civ. P. 12(b)(1), on the ground that the proper parties were not before the court." Plaintiffs failed to make a motion to dismiss for lack of subject matter jurisdiction pursuant to G.S. 1A-1, 12(b)(1). Accordingly, the trial court was denied the opportunity to make a ruling on that motion. This assignment of error fails.

This Court's review of the proceedings below is limited to the assignments of error set forth in the record on appeal. N.C.R. App. P. 10(a). Within their third assignment of error, *supra*, plaintiffs in their brief attempt to bring forth the issue that "[t]he trial court committed reversible error by denying plaintiffs' motion to dismiss defendant's counterclaim for failure to join a necessary

party." The record reflects that after stipulating in the "order on final pre-trial conference" that "[t]here are no pending motions," plaintiffs orally moved at trial to dismiss the action pursuant to G.S. 1A-1, Rule 17 and G.S. 1A-1, Rule 19 for defendant's failure to join Peachtree as a necessary party. The trial court's denial of these motions was not assigned as error and is not encompassed within plaintiffs' third assignment of error.

## VII.

[7] Plaintiffs contend that "[t]he trial court committed preju-dicial error by admitting defendant's exhibit 16 into evidence." We disagree.

Defendant's exhibit 16 was a report written by J. Kevin Foster, a consultant hired by defendant Richard Powell to evaluate Simplex in July 1988. Mr. Foster's 29 July 1988 report included an evalua-tion of "office personnel job procedures, efficiency and work-load, general ledger closing procedures, financial reporting requirements, inventory valuation and management and to determine procedures for setting-up Sun-Supply as a separate entity from Peachtree Fasteners, Inc."

Mr. Foster testified for defendant at trial. Earlier in the trial, plaintiff Richard Powell testified about Mr. Foster's report during cross-examination without objection. During this time, he was given a copy of the report and admitted that the report's recommenda-tions were not implemented. Later, Mr. Foster testified as to his report's preparation and contents. The report was offered into evidence at the end of Mr. Foster's testimony. The trial court admitted the report without objection from plaintiffs at that time. Mary Jane Whitaker, the next witness, was called to the stand. After Ms. Whitaker had been asked four questions, plaintiffs made a general objection to the admission of defendant's exhibit 16.

Plaintiffs argue that the report should have been excluded pursuant to G.S. 8C-1, Rule 402 and G.S. 8C-1, Rule 701. Initially, we note that "a general objection, if overruled, is ordinarily not effective on appeal." *State v. Hamilton*, 77 N.C. App. 506, 509, 335 S.E.2d 506, 508 (1985), *disc. rev. denied*, 315 N.C. 593, 341 S.E.2d 33 (1986); G.S. 8C-1, Rule 103(a); *see* H. Brandis, 1 *Brandis on North Carolina Evidence* § 27 (3rd ed. 1988). Absent some excep-tional situation, error may not be predicated upon the admission of evidence unless a timely objection appears of record. *Forsyth*

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

*Co. Hospital Authority, Inc. v. Sales*, 82 N.C. App. 265, 269, 346 S.E.2d 212, 215, *disc. rev. denied*, 318 N.C. 415, 349 S.E.2d 594 (1986). Here, plaintiffs failed to timely object to the admission of defendant's exhibit 16. We note that this exhibit was listed by defendant in the "order on final pre-trial conference" filed 16 May 1991, thus affording plaintiffs ample time to prepare for a timely objection to the introduction of the exhibit at trial. Furthermore, "[i]f the witness' evidence indicates that he is in fact qualified to give the challenged opinion, even a timely specific objection will not likely be sustained on appeal." *Hamilton*, 77 N.C. App. at 509, 335 S.E.2d at 509 (citations omitted). Here, Mr. Foster had testified at the beginning of his testimony that he was a self-employed financial consultant and that his training and background for that position included a degree in accounting, his experience with a Big Eight accounting firm for five years, his experience as a chief financial officer for a personal consulting firm, and his experience as general manager of the accounting department of a national soft drink company. These qualifications indicate sufficient expertise to allow us to conclude that the trial court did not err in admitting Mr. Foster's report. Finally, we note that the report was relevant since it tended to show the interconnected operations of Peachtree and Simplex, the inadequacies of the financial record keeping, and the degree of control that plaintiffs exercised over Peachtree. Accordingly, this assignment of error fails.

## VIII.

[8] Plaintiffs argue that "[t]he trial court committed prejudicial error by admitting defendant's exhibit 26 and testimony relating to it into evidence." We disagree.

Defendant's exhibit 26 was a compilation of defendant's papers used to value Peachtree in the fall of 1988. According to defendant's testimony, these papers included *inter alia* an "evaluation of the financial statements, trying to see what monies were misapplied that should have been applied to Simplex but were applied to Peachtree," "a scratch pad . . . looking at liabilities, assets and so forth trying to figure out what the real worth of the company was," "a scratch mainly looking at the assets of the corporation," "kind of a semiproforma that I worked on that would lay out what the balance sheet would look like and so forth if it was purchased and . . . a Sun Supply Company 1989 proforma . . . . We used some of this information with prospective investors." Plaintiffs ob-

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

jected to the exhibit on the specific grounds that, "This is pure speculation, self-serving." After the objection was overruled, defendant was permitted to testify that "the numbers we worked on gave us an idea of what we could offer [for Peachtree], but we did need—and that was so general because we needed a current statement. We needed information that was accurate so to come up with exact numbers was impossible until we had those."

A specific objection that is overruled is effective only to the extent of the grounds specified. *Love v. Mewborn*, 79 N.C. App. 465, 339 S.E.2d 487, *disc. rev. denied*, 317 N.C. 704, 347 S.E.2d 43 (1986). *See* H. Brandis, 1 *Brandis on North Carolina Evidence* § 27 (3rd ed. 1988). Here, plaintiffs objected at trial on the basis of the exhibit and testimony being "pure speculation, self-serving." However, these grounds are not argued in plaintiffs' brief. Plaintiffs argue in their brief that the exhibit and testimony constituted the "improper opinion of a lay witness" admitted into evidence in violation of G.S. 8C-1, Rule 701. Since plaintiffs made a specific objection at trial based upon the allegedly speculative and self-serving nature of defendant's exhibit and testimony, plaintiffs may not argue defendant's qualifications on appeal. *Love*, 79 N.C. App. 465, 339 S.E.2d 487.

IX.

[9] Plaintiffs argue that "[t]he trial court committed prejudicial error by permitting defendant to testify from personal notes not admitted into evidence." We disagree.

Defendant testified that the stockholders' equity in Peachtree was higher than the $181,932.32 reflected in the 31 October 1988 balance sheet. In calculating the amount by which Peachtree was undervalued, defendant testified as follows:

A [Defendant]: The number that I feel needed to be added back in is one hundred and forty-six thousand seven hundred and fifty-nine dollars. When added to the one eighty-one nine thirty-two, the net worth of the company when I left would be three hundred and twenty-eight thousand six hundred ninety-one dollars.

Q [Mr. Walker, Defendant's counsel]: All right. Now, let's—let me walk you through that and how you came up with it. . . . Now, what did you say that figure was?

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

MR. SURRATT [Plaintiffs' counsel]: I object, Your Honor. He seems to be testifying and reading from something that's not identified.

THE COURT: Sustained.

Q [Mr. Walker, Defendant's counsel]: Mr. Omli [defendant], what items go into the figure you've testified to?

A: The items that go into that are the salary that needed to be put back into and charged to Simplex.

Q: What else?

A: The heat, light, water.

Q: What else?

A: Rent.

Q: What else?

A: There was a charge for freight that was received back from the Holz-Her company on the material moved to Americus [Georgia].

Q: What else?

A: Because the collators were sold at their value, the depreciation on those collators needs to go back in there.

Q: What else?

A: Some travel expenses that were for Simplex.

Q: All right. What else? Let me ask you if you included the Bostitch deal in this.

A: That needs to be put in there as well.

Q: All right. Again, what—what was the amount of salary?

MR. SURRATT [Plaintiffs' counsel]: Object to reading something that hasn't been identified.

THE COURT: Sustained.

MR. WALKER [Defendant's counsel]: All right. Well, fine. Your Honor, I do think that Mr. Omli has testified and I am entitled to put the number on the board that he did testify to. Will you allow me to do that?

THE COURT: Yes.

(Mr. Walker writing on the board.)

MR. SURRATT: Your Honor, he didn't testify to those numbers and he's read them from something that's not in evidence.

THE COURT: You may cross-examine him as to those figures.

MR. SURRATT: We objected and you sustained it.

THE COURT: Overruled. Proceed.

Q [Mr. Walker, Defendant's counsel]: So, Mr. Omli, what do you—is your—what do you contend this figure represents, this three hundred twenty-eight thousand six hundred ninety-one dollars?

A: That is the true net worth, stockholders' equity of the company, when I was fired.

MR. WALKER: I don't have any other questions, Your Honor.

G.S. 8C-1, Rule 612(a) provides that "If, while testifying, a witness uses a writing or object to refresh his memory, an adverse party is entitled to have the writing or object produced at the trial . . . in which the witness is testifying." In *State v. Peacock*, 236 N.C. 137, 139-40, 72 S.E.2d 612, 615 (1952), our Supreme Court stated that

> The use of notes to quicken the memory is well recognized procedure in this jurisdiction, if the memorandum is one which had been made by the witness, or in his presence, or under his direction. *Story v. Stokes*, 178 N.C. 409, 100 S.E. 689; *S. v. Coffey*, 210 N.C. 561, 187 S.E. 754; *S. v. Smith*, 223 N.C. 457, 27 S.E.2d 114. . . . "It is quite immaterial by what means the memory is quickened; it may be a song, or a face, or a newspaper item, or a writing of some character. It is sufficient that by some mental operation, however, mysterious, the memory is stimulated to recall the event, for when so set in motion it functions quite independently of the actuating cause." *Jewett v. U.S.*, 15 F.2d 955 (1926).

> It is customary for such notes to be made available to the opposing counsel so that he may examine and cross-examine relative thereto, but in this case the record fails to disclose any effort on the part of defendant to obtain the notes or

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

to use them in cross-examination. In the absence of a request for an examination of the notes or some other effort to make them available, defendant's exceptions based upon this phase of the examination are without merit. *Manufacturing Co. v. R. R.*, 222 N.C. 330, 23 S.E.2d 32; Stansbury, paragraph 32, page 48.

Here, plaintiffs did not request to see the notes nor did plaintiffs cross-examine defendant regarding the notes. Additionally, plaintiffs failed to have the notes marked at trial for preservation in the record. Plaintiffs failed to include these notes in the record on appeal.

Assuming *arguendo* that the trial court erred by allowing defendant to testify as to the precise dollar figure of stockholders' equity, that error was harmless in light of defendant's earlier testimony and exhibits admitted into evidence without objection. Earlier in the trial, defendant testified and introduced evidence (defendant's exhibit 15) of those items which he felt had been subtracted from the stockholders' equity reflected on the 31 October 1988 balance sheet. Defendant testified at that time as follows:

> I had looked at the statements and it was very obvious that there were things like the half of my salary that was discussed earlier, travel expenses, some things like the bill for the rent where they collated the nails. There were a number of expenses that should have been charged to Simplex Nails because they belonged there that had been charged to Peachtree and Richard [Powell, plaintiff] agreed that was so. In fact, there were some remarks wrote on that sheet that he wrote and then also in agreement had a computer sheet run showing some of those that would be taken out of — as expenses out of Peachtree and put where they belonged, over to Simplex. It was very substantial. It was a lot of money and *it would make a big difference on the net worth of the company.*

> Q [Defendant's counsel]: . . . This is Defendant's Exhibit 15. What is that, please?

> A: This is a computer run and it says that it's adjustments by R.F. Powell. This is some of the adjustments that should be made — including officers' salaries, heat, light and water, building rent and so forth — that should be adjusted to where

POWELL v. OMLI

[110 N.C. App. 336 (1993)]

they belong, which is at Simplex, and they should be taken off the books of Peachtree.

(Emphasis added.) Defendant's exhibit 15 was then admitted into evidence without objection, defendant read some of the specific dollar amounts that were next to each of the expenditure categories on the sheet, and defendant testified that he "never could find them [the adjustments] as being made on the statements whatsoever." Similarly, defendant's exhibit 29, a check register showing a check to Stanley Bostitch, was admitted into evidence without objection. Defendant was permitted to testify without objection that this expense should not have been paid for by Peachtree. Since the components largely constituting the figure that defendant allegedly read into evidence from an unidentified note had already been introduced into evidence, we conclude that any error that occurred was harmless. *See State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."); *State v. Brooks*, 83 N.C. App. 179, 349 S.E.2d 630 (1986); H. Brandis, 1 *Brandis on North Carolina Evidence* § 30 (3rd ed. 1988).

## X.

[10] Finally, plaintiffs argue that "[t]he trial court committed prejudicial error by permitting Ronald Stevens' speculative testimony." We disagree.

Mr. Stevens testified that if he had received an "up-to-date" financial statement in 1988, he would have invested two hundred and fifty thousand dollars in Peachtree. Plaintiffs waived this objection later by allowing Mr. Stevens to testify without objection that "I committed to the fact that if we had an up-to-date financial statement from Peachtree then I would be there with the money" and by asking Mr. Stevens on cross-examination that "if the financials from—from this business in Georgia had turned out to be a lot worse than those projections that Mr. Omli made, that would affect your thinking about buying it, wouldn't it?" Mr. Stevens' testimony was admissible pursuant to G.S. 8C-1, Rule 701 since it was based on Mr. Stevens' perceptions and was helpful to the jury. The evidence was relevant to defendant's earlier testimony regarding his difficulty in obtaining current financial statements and to show defendant's attempts to mitigate his losses from

Peachtree by showing his efforts to save the company by bringing in investors.

## XI.

In conclusion, we reverse and remand for a new trial as to defendant's liability on the $100,000.00 promissory note. The remaining issues are affirmed.

Affirmed in part; reversed and remanded in part.

Judges ORR and JOHN concur.